**Bruce Wayne CORBIN, Appellant,**

v.

**The STATE of Texas.**

**No. 094–01.**

Court of Criminal Appeals of Texas.

June 5, 2002.

---

Ebb B. Mobley, Longview, for Appellant.

Andy Porter, Asst. DA, Longview, Matthew Paul, State's Atty., Austin, for State.

## OPINION

PRICE, J., delivered the opinion of the Court in which MEYERS, JOHNSON, KEASLER, and HOLCOMB, J.J., joined.

In this case, we determine whether the Court of Appeals misapplied the community caretaking exception to warrantless seizures where the police officer saw the appellant's car cross onto the shoulder of the road for twenty feet while traveling at fifty-two miles per hour. Because we do not believe that the officer's belief that the appellant was tired and in need of assistance was objectively reasonable, we will reverse.[1]

## FACTS

During the early morning hours of January 27, 1999, Officer James Benson was parked near the intersection of Interstate 20 and the Old Gladewater Highway in Gregg County. Around 1:00 a.m., Benson saw the appellant's car approaching. The appellant's car crossed over the side stripe and onto the shoulder of the road. Benson

---

**1.** The actual ground for review reads: "Did the Court of Appeals misapply *Wright v. State*, 7 S.W.3d 148 (Tex.Crim.App.1999) and the community caretaking function to justify the traffic stop in this case?"

estimated that the appellant traveled approximately twenty feet before returning to his lane of traffic. Benson used his radar gun and clocked the appellant traveling at fifty-two miles per hour; the speed limit was sixty-five.[2] Benson believed that the appellant had committed the offense of failing to maintain a single lane.[3] In addition, because of the time of night, the relatively low speed of travel, and the appellant's crossing onto the shoulder of the road, Benson was concerned that the appellant might be drunk or sleepy and thus, in need of assistance.[4] Benson pulled out and followed the appellant for a little over a mile. As he followed the appellant, Benson saw no traffic violations or indications that the appellant was either drunk or fatigued. Benson then turned on his overhead lights, and the appellant pulled over without difficulty.

Benson then approached the car and asked the appellant to step out. Benson patted down the appellant for weapons and felt something on the appellant's back. The appellant explained that he was wearing a back-brace for a back injury. Benson asked if the appellant had any prior arrests, and the appellant replied that he had not. Benson was preparing a written warning when dispatch informed him that the appellant had an extensive criminal history involving illegal narcotics. Benson then returned to the appellant and discovered that the back-brace was really a package of cocaine taped to the appellant's back.

The appellant was arrested and later filed a motion to suppress. After a hearing, the trial court overruled the motion without entering findings of fact or conclu-

sions of law. After a bench trial, the trial court found the appellant guilty of possession of cocaine with intent to deliver and sentenced him to thirty years' confinement and a $10,000 fine.

On appeal, the appellant argued that the trial court erred in denying his motion to suppress. *Corbin v. State,* 33 S.W.3d 90, 91 (Tex.App.-Texarkana 2000). The Court of Appeals first held that there was insufficient evidence in the record to indicate that the appellant failed to maintain his lane in an unsafe manner. *Id.* at 94. Therefore, the stop of the appellant was unreasonable under Transportation Code section 545.060(a). *Id.* The Court of Appeals, however, did find the community caretaking exception, as explained in *Wright v. State,* 7 S.W.3d 148, 152 (Tex. Crim.App.1999), to be applicable. *Id.* In applying the four *Wright* factors, the Court of Appeals held that, even though the nature and level of distress exhibited was low, Benson could have reasonably concluded that the appellant required assistance. *Id.* at 94–95. The Court of Appeals held that the motion to suppress was properly denied because Benson was exercising his community caretaking function. *Id.* at 95. We granted review to determine whether the Court of Appeals properly concluded that the community caretaking exception was applicable to this case. We will reverse.

## DISCUSSION

 When reviewing a motion to suppress, we give great deference to a trial court's determination of historical fact. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim.App.1997). When the trial court

---

**2.** Benson testified that traveling fifty-two miles per hour did not constitute a traffic violation.

**3.** Tex. Transp. Code § 545.060(a).

**4.** Also, Benson testified that if the appellant had veered onto the shoulder further down the road, the appellant may have struck concrete columns at the overpass.

does not file findings of fact, we assume that the trial court made implicit findings that support its ruling, so long as those implied findings are supported by the record. *State v. Ross,* 32 S.W.3d 853, 855 (Tex.Crim.App.2000). We will review *de novo* mixed questions of law and fact that do not turn on the credibility and demeanor of a witness. *Guzman,* 955 S.W.2d at 89. We examine the evidence in the light most favorable to the trial court's ruling. *Ross,* 32 S.W.3d at 855.

In this case, the Court of Appeals upheld the trial court's ruling pursuant to *Wright* and the community caretaking exception. *Corbin,* 33 S.W.3d at 95. After reviewing our decision in *Wright,* we think that our Fourth Amendment analysis was incomplete. We take this opportunity to expound on the *Wright* analysis.

■■■■■ To begin, it is well settled that not all encounters with the police implicate the Fourth Amendment's protection against unreasonable seizures.[5] *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *Hunter v. State,* 955 S.W.2d 102, 104 (Tex.Crim.App.1997). "So long as a reasonable person would feel free to disregard the [officer] and go about his business," a police officer may approach and ask an individual questions, including whether that individual requires assistance, without implicating the Fourth Amendment. *Bostick,* 501 U.S. at 434, 111 S.Ct. 2382; *Hunter,* 955 S.W.2d at 104. Here, however, because Benson stopped the appellant's automobile, the appellant was seized within the meaning of the Fourth Amendment. *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *Garza v. State,* 771 S.W.2d 549, 558 (Tex.Crim.App.1989).

■■■■ A seizure under the Fourth Amendment must be objectively reasonable in light of the particular circumstances of the case. *Maryland v. Wilson,* 519 U.S. 408, 411, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997); *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Whether a stop is reasonable depends on "a balance between the public interest and the individual's right to personal security free from arbitrary interference by law enforcement." *Wilson,* 519 U.S. at 411, 117 S.Ct. 882; *Prouse,* 440 U.S. at 654–55, 99 S.Ct. 1391; *United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). A seizure based on reasonable suspicion or probable cause will generally be reasonable. *Whren v. United States,* 517 U.S. 806, 818, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *Terry,* 392 U.S. at 21–23, 88 S.Ct. 1868. But, even without reasonable suspicion or probable cause that an offense has been committed, a police officer may reasonably seize an individual through the exercise of his community caretaking function. *Wright v. State,* 7 S.W.3d at 151–52; *see also United States v. King,* 990 F.2d 1552, 1560 (10th Cir.1993).

■■■■ Because a police officer's duties involve activities other than gathering evidence, enforcing the law, or investigating crime, the Supreme Court has characterized a police officer's job as encompassing a community caretaking function. *Cady v. Dombrowski,* 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *Wright,* 7 S.W.3d at 151. As part of an officer's duty to "serve and protect," an officer "may stop and assist an individual whom a reasonable person, given the totality of the circumstances, would believe *is in need of help.*" *Wright,* 7 S.W.3d at 151 (emphasis added). The community care-

**5.** The Fourth Amendment is made applicable to the States through the Fourteenth Amendment. *Mapp v. Ohio,* 367 U.S. 643, 654–55, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

taking function, however, is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady,* 413 U.S. at 441, 93 S.Ct. 2523. As a result, a police officer may not properly invoke his community caretaking function if he is primarily motivated by a non-community caretaking purpose. *See Wright,* 7 S.W.3d at 151 ("[W]e must determine if [the officer] acted reasonably when he stopped the vehicle *out of concern for the welfare of the appellant* ...") (emphasis added). Professor LaFave explains, "[I]t apparently remains open to defendants, whenever the challenged seizure or search is permitted without probable cause because of the special purpose being served, to establish a Fourth Amendment violation by showing the action was in fact undertaken for some other purpose ..." WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 1.4 (3d ed.1996) (discussing the Supreme Court's *Whren* decision). Here, the record reflects that Officer Benson was concerned that both the appellant was tired and that the appellant may be drunk. The trial court, as the exclusive judge of credibility and finder of fact, could have concluded that Officer Benson was primarily motivated by community caretaking concerns. *See Ross,* 32 S.W.3d at 855.

■■■ Once it is determined that an officer is primarily motivated by his community caretaking function, it must then be determined whether the officer's belief that the defendant needs help is reasonable. *Wright,* 7 S.W.3d at 151–52. In evaluating whether an officer reasonably believes that a person needs help, courts may look to a list of four non-exclusive factors: (1) the nature and level of the

distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual was alone and/or had access to assistance other than that offered by the officer; and 4) to what extent the individual, if not assisted, presented a danger to himself or others. *Id.* at 152.

■■■ Because the purpose of the community caretaking exception is to allow an officer to "seize" and assist an individual whom he reasonably believes is in need of help, the first factor is entitled to the greatest weight. The greater the nature and level of distress exhibited, the more likely the police involvement will be a reasonable exercise of the community caretaking function. This is not to say that the weight of the first factor alone will always be dispositive. In fact, the remaining three factors help to give more definition to the first factor. A particular level of exhibited distress may be seen as more or less serious depending on the presence or absence of the remaining three factors.[6]

■■■ Here, the first factor, the nature and level of the distress exhibited, is extremely low. According to Benson's testimony, the distress exhibited by the defendant was his traveling for twenty feet at fifty-two miles per hour over the side stripe of the road. An individual traveling at fifty-two miles per hour will travel twenty feet in less than one second. Given the frequency with which the average driver occasionally strays over the side stripe of the road, we have difficulty even characterizing this behavior as "distress." *Cf. Hernandez v. State,* 983 S.W.2d 867, 870 (Tex.App.-Austin 1998, pet. ref'd) ("We cannot turn a blind eye to common sense and experience. There are myriad reasons why the wheels of a vehicle might

---

**6.** Circumstances unique to a particular case, of course, may also swing the balance one

way or the other.

drift slightly across a lane marker a single time."). This is especially true in this case because after Benson saw the appellant cross over the side stripe, cross back over, and then pass Benson, Benson followed the appellant for over a mile before stopping him. In that distance, Officer Benson observed no other behavior that could indicate fatigue or a traffic violation. This factor weighs against the stop.

Concerning the second factor, the location of the appellant was near the intersection of an interstate and a highway. Although the Court of Appeals characterized the location as a "somewhat isolated stretch of interstate highway," we find nothing in the record that describes the location other than as an intersection. *Corbin*, 33 S.W.3d at 94. Since there is nothing in the record indicating that this area is isolated with little traffic and no business or houses nearby, it cannot support the ruling. At best, it is a neutral factor.

The third factor weighs in favor of the stop. The appellant was alone in the automobile and there is no indication that he had access to assistance independent of Officer Benson.

The fourth factor, the extent to which the individual presented a danger to himself or others if not assisted, weighs against the stop. If the appellant was having difficulty staying awake, there is a risk that he could fall asleep and lose control of his automobile. This would present a danger not only to himself, but to any other driver on the road. But, the distress exhibited by the appellant ended in less than one second. After the appellant crossed back over onto the road, he drove normally and did not appear to be a danger to himself or other drivers.

Applying the *Wright* factors, we conclude that Officer Benson's exercise of his community caretaking function was not reasonable. Although it certainly would be reasonable for a police officer to stop an individual who appears to be falling asleep while driving, the level of distress exhibited here does not reflect such an individual. The appellant crossed over the side stripe for only twenty feet and then continued to drive normally. If the appellant was sleepy or falling asleep while driving, a reasonable person would expect to see more indications of fatigue. Here, we have one isolated incident of crossing the side stripe for less than one second. After the incident, the appellant drove in a normal fashion and did not present a risk to himself or other drivers. Although it is true that the appellant was traveling under the speed limit, we do not think that his speed was so low that a reasonable person would believe that the appellant was in distress. *Cf. Ortega v. State*, 974 S.W.2d 361, 364 (Tex.App.-San Antonio 1998, pet. ref'd) (holding that the stop of the defendant's automobile was justified because the defendant was traveling in the early morning hours at a speed of between eighteen and twenty miles per hour, less than half the posted speed limit of fifty miles per hour). The level of distress exhibited by the appellant was simply too minor for Benson to reasonably believe that the appellant was falling asleep and in need of assistance. *Cf. Lebron v. State*, 35 S.W.3d 774, 776–77 (Tex.App.-Texarkana 2001, pet. ref'd) (police officer reasonably exercised community caretaking function when the officer, responding to a reported accident, discovered the defendant driving very slowly, eventually coming to a stop on the road, with two flat tires). Accordingly, the appellant's interest in being free from arbitrary government interference outweighed Officer Benson's exercise of his community caretaking function. *See Brignoni–Ponce*, 422 U.S. at 878, 95 S.Ct. 2574;

*King,* 990 F.2d at 1560; *Wright,* 7 S.W.3d at 151–52.

### CONCLUSION

The Court of Appeals upheld the trial court's ruling based on a police officer's community caretaking function. That ruling, however, cannot be upheld under this theory because a belief that the appellant was in need of assistance is unreasonable. The Court of Appeals's judgment is reversed, and this case is remanded to that court for a harm analysis under Texas Rule of Appellate Procedure 44.2.

WOMACK, J., concurred.

COCHRAN, J., filed a concurring opinion.

KELLER, P.J., filed a dissenting opinion in which HERVEY, J., joined.

COCHRAN, J., filed a concurring opinion.

I concur in the judgment of the court. I agree with the majority's general statements of the law concerning the communi-ty caretaking doctrine. I respectfully disagree with the majority's conclusion that Officer Benson's initial stop of appellant was not objectively reasonable. However, even if the stop were objectively reasonable under the totality of circumstances, the officer's subjective motive for that stop shows that he was not engaged in community caretaking. Appellant's initial detention cannot be justified, after the fact, as an exercise of his community caretaking duties when he did not actually have that purpose in mind. Therefore, I concur in the result but not in the analysis that led the majority to its conclusion.

Law enforcement officers frequently engage in public service activities which are wholly distinct from their duty to detect, investigate, and prevent crime. The United States Supreme Court has categorized those as "community caretaking functions." [1] In fact, the community caretaking doctrine is a broad term for three separate doctrines: 1) the emergency aid doctrine; [2] 2) the automobile impoundment and inventory doctrine; [3] and 3) the public servant doctrine. [4] Each one of these doc-

1. *See Cady v. Dombrowski,* 413 U.S. 433, 447, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) (recognizing a justification for a search to protect the general public); *see also Terry v. Ohio,* 392 U.S. 1, 13, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (noting that encounters between the police and citizens vary widely in purpose and may be unrelated to criminal prosecution).

2. *See Mincey v. Arizona,* 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (noting an exception to the warrant requirement for emergencies, such as entering a house to attempt to save the life of a homicide victim, but holding that there is no "crime scene" exception to the warrant requirement; once the emergency dissipates, officers are required to obtain a search warrant).

3. *See Cady,* 413 U.S. at 441, 443, 447, 93 S.Ct. 2523; *see also South Dakota v. Opperman,* 428 U.S. 364, 366, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). This exception encompasses two steps involving the Fourth Amendment. The first is the initial impoundment of the car—the restraint—and the second is the resulting inventory search—the intrusion. Part of the Supreme Court's rationale for upholding the impoundment/inventory prong of the community caretaking doctrine in *Opperman* was that: "there is no suggestion whatever that this standard procedure, essentially like that followed throughout the country, was a pretext concealing an investigatory police motive." 428 U.S. at 375, 96 S.Ct. 3092.

4. *See Cady,* 413 U.S. at 436–37, 447, 93 S.Ct. 2523 (noting that police were simply responding to a traffic accident rather than seeking to implicate the defendant in a crime; initial encounters in such situations satisfy the Fourth Amendment's reasonableness standard because they lack any crime-investigation purpose).

trines acts as an exception to both the warrant requirement and the probable cause requirement of the Fourth Amendment.

The common thread in each of these exceptions to the warrant and probable cause requirements is the officer's purpose. He is not acting in his "crime-fighting" role; his purpose is not to investigate crime or find evidence. Rather, his primary concern is for the public welfare or the protection of a person's physical safety or personal property.[5] As Professor LaFave has stated it:

> The policeman, as a jack-of-all emergencies, has "complex and multiple tasks to perform in addition to identifying and apprehending persons committing serious criminal offenses"; by default or design he is also expected "to aid individuals who are in danger of physical harm," "to assist those who cannot care for themselves," and "to provide other services on an emergency basis." If a reasonable and good faith search is

made of a person for such a purpose, then the better view is that the evidence of crime discovered thereby is admissible in court.[6]

Thus, when a police officer detains a person or searches a person or property, not because the officer suspects criminal wrongdoing, but because he is engaged in one of these community caretaking activities, the officer's "suspicionless" conduct may be reasonable under the Fourth Amendment. Courts must examine both the officer's subjective belief that the caretaking is necessary *and* whether his conduct is objectively reasonable under the totality of the circumstances.[7] If his subjective purpose is to investigate crime or gather evidence for a criminal charge, he is not acting as a community caretaker and these doctrines cannot be used, post hoc, to justify his conduct.[8] Even when the officer subjectively believes that the caretaking activity is necessary, if his belief is not objectively reasonable, conduct which

---

**5.** That is not to say that the officer must be entirely pure in motive. He may hope that the murder suspect is still on the scene when he enters the house seeking to save the shooting victim. He may hope that the inventory search turns up some incriminating evidence. He may hope that the stranded motorist waving for attention is an escaped convict. But in each instance the subjective good faith purpose for his conduct is to perform a "caretaking" function, not a crime-fighting function.

**6.** Wayne R. LaFave, Search and Seizure § 5.4(c) at 345 (1978) (quoting ABA Standards Relating to the Urban Police Function § 1.1(b)(1973)).

**7.** *See, e.g., Brimage v. State*, 918 S.W.2d 466, 483 n. 16 (Tex.Crim.App.1996) (when officers themselves "were under no delusion that their search was in response to an emergency," their conduct could not be upheld under emergency doctrine; noting that with invocation of emergency doctrine " 'it is essential that courts be alert to the possibility of subterfuge, that is a false claim of such a purpose

where the true intent is to seek evidence of criminal conduct' ") (quoting LaFave, *supra*, § 6.6(a), at 706).

**8.** The subjective good faith of the officer in the community caretaking context is not inconsistent with the "pretext stop" doctrine set out in *Whren v. United States*, 517 U.S. 806, 809–10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). The decision to stop an automobile is generally deemed to be constitutionally reasonable when an officer has probable cause to believe that a traffic violation has occurred, regardless of his subjective "bad faith" and underlying purpose to search for evidence of another crime. The community caretaking doctrine acts in reverse: the officer does *not* have probable cause to believe that the person stopped has committed a crime, but the detention is reasonable under the Fourth Amendment if the officer has subjective good faith and an objectively reasonable belief that the person detained is in need of immediate assistance.

would otherwise violate the Fourth Amendment cannot be justified as community caretaking.[9]

In *Wright v. State*,[10] this Court set out a list of four non-exclusive factors to assist in deciding whether a police officer acted reasonably when he temporarily detained a person to determine if that person needed assistance. The majority recites these factors and concludes that it was not objectively reasonable to believe that appellant required assistance.[11] I disagree. I believe that the trial judge, based upon the facts in this case, could have concluded that Officer Benson's act of temporarily stopping appellant was objectively reasonable as an attempt to assist a late-night motorist who might be falling asleep at the wheel. I concur in the result, however, because it is clear from the record that Officer Benson did not, in fact, stop appellant for this reason. It is apparent from the record that Officer Benson stopped appellant to investigate what he believed was a crime.

Officer Benson testified that he is a canine drug interdiction patrol officer and that he was parked along I–20 that night for that purpose. He had his radar on and his dog in the back seat. Office Benson explicitly agreed that he was "going to detain [appellant] for the purpose of investigating" his slow driving and crossing over the shoulder of the road for twenty feet. He stated that he stopped appellant for committing an offense: failure to maintain a single lane. This is not community caretaking; this is crime investigation.[12] Officer Benson turned on his patrol car video camera and videotaped the entire event. This is not community caretaking; this is evidence collecting and preservation. That is not to say that Officer Benson's conduct was necessarily a violation of the Fourth Amendment,[13] but merely that it clearly was not motivated by any "public servant" purpose.

Although an appellate court may uphold a trial court's ruling on any legal basis or theory supported by the evidence and the applicable law, the evidence here simply does not support a finding that Officer Benson was acting as a "jack-of-all-emergencies" in stopping appellant. The "community caretaker" justification for Office Benson's actions was not raised in the trial court and the trial judge did not make any finding that the purpose of Officer Benson's stop of appellant's car was to inquire about and provide assistance to a motorist in distress. Neither a trial nor appellate court may assign a subjective good faith purpose to a witness' conduct that the witness never said he had. Thus, Officer Benson's conduct cannot now be justified as appropriate community caretaking.

9. In *Wright v. State*, 7 S.W.3d 148 (Tex.Crim. App.1999), this Court stated: "[a]s a part of his duty to 'serve and protect,' a police officer may stop and assist an individual whom a reasonable person—given the totality of circumstances—would believe is in need of help." *Id.* at 151.

10. *Id.*

11. *See ante*, op. at 277.

12. Officer Benson did testify that this section of I–20 contained concrete columns and that it was a potentially dangerous stretch of road.

He also said that he was concerned that possibly appellant could be either intoxicated or fatigued. But those concerns were not the reason he stopped appellant. They were circumstances which might have justified his actions, but they were not the rationale for his initial detention.

13. In this petition for discretionary review, we are not called upon to decide whether Officer Benson had probable cause to stop appellant for failing to maintain a single marked lane of traffic. *See* Tex. Transp. Code § 545.060.

Therefore, I join in the judgment of the majority.

KELLER, P.J., filed a dissenting opinion in which HERVEY, J., joined.

I agree with the concurring opinion that the stop in this case was objectively reasonable. Unlike the concurring opinion, however, I think that the trial court did not err in overruling the motion to suppress. I agree with the Court that the record supports a finding that the officer was, at least in part, exercising his function as a community caretaker in stopping appellant.[1] I would hold that, in such circumstances, the coexistence of a non-community caretaking motive does not invalidate the stop.

At a suppression hearing, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.[2] Here the trial court made no findings of fact. In such circumstances, appellate courts are to view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling, as long as those findings are supported by the record.[3] The record in this case supports a finding that the officer stopped appellant in part for community caretaking reasons.

On direct examination, the following occurred:

Q. So based on the—what offense did you pull him over for?

A. The offense title was fail to yield road.

Q. And basically we sometimes refer to as failure to maintain single lane?

A. That's correct.

Q. Oftentimes, Officer, when someone has failed to maintain a single lane, what is that an indication of or causes concern?

A. Well, at this time of the morning I was concerned that Mr. Corbin had possibly been drinking or was falling asleep. Coupled with the fact that he left his lane of travel, he was traveling at a speed of, I believe, 52 miles per hour in a 65–mile–per–hour speed zone, which is quite a whole lot less.

On redirect, the officer testified to the following:

Q. . . . . You said one of the reasons you pulled him over was potentially intoxicated driver?

A. Yes.

Q. Was another concern you had—I think you testified on direct examination was also just driver safety?

A. That's correct.

Q. And what was that concern about?

A. Well, as he was coming up the hill, I was sitting at the Mount Pisgah Overpass. And there is some awful large concrete columns there that, you know, if in fact he would have left his lane of travel, shortly after he did the first time, it was a chance he could have had a collision. It was definitely not a safe move crossing the lane.

As long as the stop pursuant to the community caretaking function is not a mere subterfuge for investigation, the coexistence of investigatory and caretaking motives should not invalidate the stop.[4]

1. See majority opinion at 7.

2. See State v. Ballard, 987 S.W.2d 889, 891 (Tex.Crim.App.1999).

3. See State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim.App.2000).

4. See United States v. Rodriguez–Morales, 929 F.2d 780, 787 (1st Cir.1991); But see People v. Ray, 21 Cal.4th 464, 88 Cal.Rptr.2d 1, 981 P.2d 928, 938 (Cal.1999) (stating that any intention of engaging in crime-solving activi-

Looking at the record in light most favorable to the trial court's ruling, the record supports a finding that Officer Benson's exercise of his community caretaking function was not merely a pretext for investigation.

I respectfully dissent.

ties will defeat the community caretaking exception even in cases of mixed motives).