NO. 07-04-0004-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

SEPTEMBER 24, 2004
_____

JOSE L. LOSOYA,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2002-400,564; HON. CECIL PURYEAR, PRESIDING
_____

Before QUINN, REAVIS and CAMPBELL, JJ.

Appellant, Jose L. Losoya, appeals his conviction for felony driving while intoxicated. His sole issue involves the trial court's decision to deny his motion to suppress. He contends that the court erred since the detaining officer had neither reasonable suspicion to stop appellant nor a reasonable belief that he (the officer) was executing a community care-taking stop. We affirm the judgment of the trial court.

*Standard of Review*

The standard of review is one of abused discretion. *Guzman v. State,* 955 S.W.2d 85 (Tex. Crim. App. 1997). Thus, we defer to the trial court's findings of historical fact but

review, *de novo*, the manner in which it applied the law to those facts. *Id.* at 89. Moreover, we need not rely solely upon the reasons given by the trial court to uphold its decision for the decision must be upheld if supported by any legal theory. *Armendariz v. State,* 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied,* ___U.S. ___, 124 S.Ct. 1883, 158 L.Ed.2d 469 (2004).

*Facts*

According to the record, Officer Phillip Johnson, the only witness at the suppression hearing, was headed eastbound towards the intersection of Indiana Avenue and Brownfield Highway in Lubbock, Texas. The time was 1:30 a.m. Upon approaching the intersection, the officer slowed and stopped since he had a red light. Facing him across the intersection was a vehicle positioned to turn south on to Indiana. The vehicle was stopped, however, even though it had a green arrow permitting the turn. When Johnson's light turned green, he passed the stopped vehicle and saw its driver, *i.e.* appellant, with his eyes closed, head tilted to the side, and mouth open. In response to what he saw, Johnson turned his squad car around and engaged his emergency lights to keep others on the road from colliding with appellant's vehicle. As he did so, he noticed that appellant had made the turn and was proceeding down Indiana, "swerving back and forth." The officer followed, intermittently engaging his siren in an effort to stop appellant. The latter did not stop for the officer, however. Instead, and while heeding the occasional traffic stop sign and signal, appellant drove on until he reached his home and parked the vehicle on both his driveway and lawn. Officer Johnson arrived momentarily thereafter and met with appellant after appellant exited his car. After noticing that appellant was stumbling, unable to stand, was

2

slurring his speech, and smelling of alcohol, the policeman advised him that he was being arrested for evading arrest or detention and for driving while intoxicated.

*Application of Law*

A police officer may reasonably seize an individual in exercise of his community caretaking function irrespective of whether he had reasonable suspicion to believe that criminal activity was afoot or probable cause to arrest. *Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002). Furthermore, in assessing whether the stop was justified on this basis, the court must engage in several exercises. First, it must determine if the officer was actually motivated by a desire to provide for the welfare of the detainee. *Id.* at 276-77. If it should be found that the officer was so motivated, then the court next must gauge the reasonableness of the officer's belief that there existed a need for caretaking. *Id.* at 277. This is done by considering various factors such as 1) the nature and level of distress previously exhibited by the potential detainee, 2) the location of the individual, 3) whether or not the individual was alone or had access to help independent of the officer, and 4) the extent to which the detainee, if not assisted, presented a danger to himself or others. *Id.*

Regarding the matter of exercising his caretaking function, the officer at bar saw appellant stopped at a green light in the wee hours of the morning with his head tilted to the side, eyes closed, and mouth open. These circumstances caused him to wonder whether appellant was unconscious, the victim of some malady such as a heart attack, or intoxicated. And, because of that, he decided to approach and stop appellant to determine why he appeared as he did. Thus, the record contains evidence upon which a trial court could have reasonably concluded that Officer Johnson "was primarily motivated by

3

community caretaking concerns." *Id.* That is, while the police officer mentioned that he wondered if appellant was drunk, the trial court, like that in *Corbin*, could have discounted this reason for turning to investigate (given its authority to weigh the evidence and resolve conflicts therein) and instead concluded that the officer was primarily motivated by a desire to investigate whether appellant needed help. *Id.* Indeed, the officer testified that upon turning around, he engaged his emergency lights to prevent vehicles from colliding with appellant. That is some evidence from which it reasonably could be inferred that appellant's safety, and that of others on the road, was foremost in the policeman's mind.

Additionally, our Court of Criminal Appeals has stated that "it certainly would be reasonable for a police officer to stop an individual who appears to be falling asleep while driving." *Id.* at 278. And, that appears to be the very scenario that unfolded before Johnson. Again, appellant's head was cocked to the side, his mouth was open and his eyes were closed while stopped at a green light. Moreover, that he swerved to and fro and failed (for whatever reason) to respond to the officer's emergency lights and siren lends further support to the inference that appellant may have been suffering from some mental or physical impairment or may have been lapsing into and out of consciousness. Indeed, it is difficult to be unaware of the glare of flashing emergency lights atop a police car at night or the sound of a siren unless some condition restricts an individual from perceiving them. Thus, there exists some evidence of record upon which the trial court could have reasonably found that the nature and level of distress being exhibited by appellant was relatively high. We couple this to the facts that he was alone in the car while driving on a public road within city boundaries and through a residential area. And, upon so combining

4

the evidence, we encounter basis upon which the officer could have deduced that appellant posed a danger to himself and no one else was available to help him.

In short, the record contains evidence permitting the trial court to reasonably conclude that factors mentioned in *Corbin* authorized Johnson's intervention as part of his caretaking function. More importantly, the very same evidence authorizing the intervention also gives rise to another basis upon which the trial court could have denied the motion to suppress. It involves a convergence of the caretaking function and probable cause to arrest. Again, we have no doubt that the initial circumstances unfolding before the officer allowed him to stop appellant to investigate whether he needed help. So, Johnson was justified in activating his emergency lights and siren to effectuate the stop. In turn, that appellant failed to comply and stop evinces criminal activity. Simply put, one is obligated to stop once an officer has signaled for him to do so. *Winter v. State,* 902 S.W.2d 571, 573-74 (Tex. App.–Houston [1st Dist.] 1995, no pet.). Failing to comply with the directive gives rise to probable cause to arrest the person. *Martinez v. State*, 644 S.W.2d 104, 108-09 (Tex. App.–San Antonio 1982, no writ). So, the trial court could have also reasonably concluded that Officer Johnson had probable cause to seize appellant once appellant did stop.

In sum, the evidence of record supports several theories upon which the trial court could have legitimately decided to deny appellant's motion to suppress. Because it does, we overrule the sole issue before us and affirm the judgment of the trial court.


Brian Quinn
Justice

Do not publish.

5