**Jacob B. SALINAS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–06–00427–CR.**

Court of Appeals of Texas,
San Antonio.

Feb. 28, 2007.

Discretionary Review Refused
June 27, 2007.

Lori O. Rodriguez, Asst. Public Defender, San Antonio, for appellant.

Susan D. Reed, Crim. Dist. Atty., San Antonio, for appellee.

Sitting: CATHERINE STONE, Justice, KAREN ANGELINI, Justice, STEVEN C. HILBIG, Justice.

## OPINION

Opinion by STEVEN C. HILBIG, Justice.

Appellant, Jacob B. Salinas, pled nolo contendere to driving while intoxicated. In a single issue on appeal, Salinas asserts the trial court erred in denying his pretrial motion to suppress. We reverse and remand.

## WAIVER

■ As an initial matter, the State contends Salinas waived his right to appeal because he did not obtain a written ruling on his motion to suppress prior to entering his plea. The suppression hearing was held on November 23, 2005, and the trial court's judgment of conviction was signed on June 15, 2006. The trial court signed an order denying the motion to suppress one day later, on June 16, 2006. However, at the conclusion of the November 2005 suppression hearing, the trial court expressly denied the motion on the record. Because a written motion to suppress had been filed and ruled on prior to Salinas entering his plea, Salinas may properly appeal pursuant to Texas Rule of Appellate Procedure 25.2(a)(2).

## MOTION TO SUPPRESS

Salinas asserts the trial court erred in denying his motion to suppress. A discussion of the facts is necessary to resolve his complaint.

San Antonio Police Department Officer Arthur DeHoyos was the only witness to testify at the suppression hearing. DeHoyos said he was on-duty[1] at about midnight on January 27, 2005, when he exited Highway 90 onto Zarzamora Street in San Antonio, Texas. As he approached a red light at what he described as a "T-intersection," DeHoyos saw a van ahead of him that was stopped at the red light. When the light turned green, the van proceeded into the intersection and then stopped about five feet from the opposite curb of the T-intersection. When the van turned right, DeHoyos activated his overhead emergency lights. The van then pulled into an Exxon station and stopped. DeHoyos approached the van, identified Salinas as the driver and determined Salinas was intoxicated.

DeHoyos testified that prior to the stop, he could not see into the interior of the van, did not know the number of occupants in the van, observed no facts other than the manner in which the driver executed the turn that suggested the driver was in any distress, observed no traffic violations committed by the driver, and that he had "essentially a hunch" that the driver posed a danger to himself or others. In his report, DeHoyos wrote only of his thought that the driver might be lost as the reason for the stop. However, DeHoyos testified at the suppression hearing he decided to stop the van to determine whether there was something medically wrong with the driver or if the driver was lost.

■ We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim.App.2000); *Guzman v. State*, 955

---

1. DeHoyos testified he was working an extra shift participating in the DWI–STEP program. He testified the purpose of the program was to provide enhanced enforcement of the DWI laws.

S.W.2d 85, 89 (Tex.Crim.App.1997). We give almost total deference to a trial court's determination of historical facts, especially when the fact findings are based on an evaluation of the witnesses' credibility and demeanor. *State v. Ross,* 32 S.W.3d 853, 856 (Tex.Crim.App.2000); *Guzman,* 955 S.W.2d at 89. We review de novo the court's application of the law of search and seizure to those facts. *Ross,* 32 S.W.3d at 856.

 Because Salinas's vehicle was stopped without a warrant, the State bears the burden of proving its conduct falls within one of the exceptions to the warrant requirement of the Fourth Amendment. *See Torres v. State,* 182 S.W.3d 899, 902 (Tex.Crim.App.2005). A police officer's community caretaking function is one such exception. *Wright v. State,* 7 S.W.3d 148, 151 (Tex.Crim.App.1999); *see also Corbin v. State,* 85 S.W.3d 272, 276 (Tex.Crim. App.2002). Here, the State seeks to justify its conduct based on this exception.

 We engage in a two-step analysis to determine the propriety of a stop pursuant to the community caretaking function. First, we determine whether the police officer was motivated by a community caretaking purpose and second, we determine whether the police officer's belief that the individual needed help was reasonable. *See Corbin,* 85 S.W.3d at 277 [2]; *see also Wright,* 7 S.W.3d at 151. Here, the trial court, as fact-finder and the exclusive judge of credibility, could have determined DeHoyos was primarily motivated by community caretaking concerns. As to the second issue, when deciding whether an officer has an objectively reasonable belief someone needs help, we consider the

following: "(1) the nature and level of distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual was alone and/or had access to assistance other than that offered by the officer; and (4) to what extent the individual, if not assisted, presented a danger to himself or others." *Id.*

 **1. Level of distress.** The first factor is entitled to the greatest weight because "the purpose of the community caretaking exception is to allow an officer to 'seize' and assist an individual whom he reasonably believes is in need of help." *Corbin,* 85 S.W.3d at 277. "The greater the nature and level of distress exhibited, the more likely the police involvement will be a reasonable exercise of the community caretaking function." *Id.* The weight of the first factor alone will not always be dispositive; instead, the remaining three factors help to give more definition to the first factor. *Id.* "A particular level of exhibited distress may be seen as more or less serious depending on the presence or absence of the remaining three factors." *Id.*

According to DeHoyos, the only distress exhibited by Salinas was his moving through the intersection instead of immediately turning left or right, and finally making the turn when he was about five feet from the curb. DeHoyos asserted he could not understand why a driver would make the mistake Salinas made because the area was well-lit and any driver could see nothing was straight ahead except grass and the traffic light. However, DeHoyos admitted nothing else suggested the driver or anyone in the vehicle was in

---

**2.** Judge Cochran succinctly stated this rule in her concurring opinion:

Courts must examine both the officer's subjective belief that the caretaking is necessary *and* whether his conduct is objectively

reasonable under the totality of the circumstances.

*Corbin,* 85 S.W.3d at 280 (emphasis in the original).

distress. Given the fact that DeHoyos observed no other problems with the driver's operation of the van and that the driver appeared to immediately respond to the use of the police emergency lights, we conclude the nature and level of distress exhibited to be very low.

2. **Location.** The second factor emphasizes the location of the individual. Through his testimony, DeHoyos indicated Highway 90 and Zarzamora are well-traveled roadways and DeHoyos described the area at the T-intersection as "well-lit." DeHoyos testified it was not "a very friendly area" because there were "a lot of courts [3]" behind the Exxon station. However, the Exxon station was open for business. We conclude this factor weighs neither for nor against the stop.

3. **Available assistance.** The third factor analyzes whether the individual was alone or had assistance other than that offered by the police officer. DeHoyos said he could not see inside the van when he was stopped behind it at the red light and he did not know before the stop whether anyone other than the driver was inside the van. Although the Exxon station was in the immediate vicinity of the stop and the station was open, because DeHoyos could not determine if Salinas was alone or capable of seeking help, this factor weighs in favor of the stop.

4. **Danger to himself or others.** The extent to which an individual without assistance would present a danger to himself or others correlates to the nature and level of distress reasonably perceived. DeHoyos

first observed Salinas when he saw the van stopped at a red light. Salinas did not begin to move until after the light turned green, at which point he proceeded straight ahead before making his turn. However, although Salinas initially proceeded straight through the intersection, he made his turn and then proceeded to the Exxon station after DeHoyos activated his overhead lights. DeHoyos failed to articulate any other action by Salinas that indicated he was a danger to himself or others.[4] DeHoyos admitted there were no other vehicles on the road and Salinas did not impede any traffic. Thus, it appears that there is little objective evidence that Salinas posed danger to himself or others, and this factor weighs against the stop.

Based on the facts in the record before us, we conclude DeHoyos's exercise of his community caretaking function was not objectively reasonable, and the trial court erred in overruling Salinas's motion to suppress.

### REASONABLE SUSPICION OF INTOXICATION

██ The State asserts that even if DeHoyos was not justified in stopping Salinas based on his community caretaking function, DeHoyos had reasonable suspicion to believe Salinas was driving while intoxicated. The record does not support this argument. DeHoyos admitted he did not observe any symptoms of intoxication exhibited by Salinas until after the stop was made. Furthermore, DeHoyos "somewhat

---

3. DeHoyos was presumably referring to areas with public housing.

4. After DeHoyos testified about how the driver executed the turn, the prosecutor asked the following:

Q. Now, at that point in time did you think that whoever was in the automobile presented a danger to himself or others?

A. *At that point it was—well, like I said, there might have been a little bit of suspicion because I—you know, I couldn't see what the reason would be for him to continue straight through the intersection where there is no roadway to continue straight through.*

758

agreed" that the manner in which the turn was executed was not evidence of intoxication, and he testified he did not use the turn as a factor in his later determination that Salinas was intoxicated.

## CONCLUSION

We reverse the trial court's judgment and remand this case to the trial court for further proceedings consistent with this opinion.