

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-09-00437-CR

JOHN MURRAY BENNETT

APPELLANT

V.

THE STATE OF TEXAS

STATE

------------

## FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I. Introduction

In a sole point, Appellant John Murray Bennett appeals from the trial court's denial of his motion to suppress. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Procedural History

Bennett was charged with DWI-felony repetition. The trial court carried Bennett's motion to suppress until trial and held a suppression hearing during Azle Police Officer Rusty Wingate's testimony, discussed below. Following the hearing, the trial court denied the motion and proceeded with trial. The jury convicted Bennett of felony DWI, the trial court assessed five years' confinement as punishment, and this appeal followed.

## III. Discussion

Bennett argues that the trial court erred by finding that his detention was properly supported by the evidence and by denying his motion to suppress.

### A. Community Caretaking Function

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). An officer's community caretaking function is a narrowly applied exception to the Fourth Amendment's warrant requirement. *Wright v. State*, 7 S.W.3d 148, 151–52 (Tex. Crim. App. 1999). Under the community caretaking exception, an officer may stop and assist an individual whom a reasonable person would believe is in need of help given the totality of the circumstances. *Id.* However, in order to invoke his community caretaking function, the officer's primary motive must be concern for the individual's well-being. *Corbin v. State*, 85 S.W.3d 272, 277 (Tex. Crim. App. 2002).

Determining whether the officer properly invoked his community caretaking function is a two-step process. *Swaffer v. State*, 258 S.W.3d 254, 260 (Tex. App.—Fort Worth 2008, pet. ref'd) (citing *Corbin*, 85 S.W.3d at 277). We must first determine whether the officer was primarily motivated by a community caretaking purpose and then whether the officer's belief that his assistance was required was reasonable. *Swaffer*, 258 S.W.3d at 260–61. Then we consider these non-exclusive factors: (1) the nature and level of distress exhibited by the individual; (2) the individual's location; (3) whether the individual was alone or had other access to assistance besides that of the officer; and (4) to what extent the individual, if not assisted, presented a danger to himself or others. *Wright*, 7 S.W.3d at 151–52. The first factor is entitled to the greatest weight. *Corbin*, 85 S.W.3d at 277.

## B. Analysis

During the suppression hearing, Officer Wingate testified that on the night of November 5, 2006, during his conversation with two pedestrians who had been walking in the street "right down a hill from where the accident occurred . . . a vehicle . . . [a] guy stops me and says, hey, a guy wrecked out on his motorcycle, you need to go check on him." He stated that he stopped Bennett because he thought an accident had occurred and that the parties involved were in distress and that "[i]f anyone had come around that blind corner where they[2]

---

[2]There were two people on the motorcycle. The parties do not dispute that Bennett was the driver.

3

were stalled out there, it would have been easy for them to have been r[u]n over." At the conclusion of the suppression hearing, the trial court overruled Bennett's objection.

During trial, Officer Wingate added that the streets were wet and slippery that night and that he learned of the motorcycle accident, which was about a block away from his location, around 8:00 p.m. The DVD from his patrol unit's dashboard camera, which was admitted in evidence and published to the jury during his testimony, shows that the roads were wet, that it was very dark, that Bennett pulled into a parking lot shortly after restarting his motorcycle, and that a highway road sign warns of curves in the road just beyond the parking lot entrance.

The trial court reasonably could have found that Officer Wingate was primarily motivated by his community caretaking function because Officer Wingate testified that he stopped Bennett and his passenger because they appeared to be in distress and that he "was unsure if anyone was hurt or not." *See Corbin*, 85 S.W.3d at 277; *Chilman v. State*, 22 S.W.3d 50, 55 (Tex. App.—Houston [14th Dist.] 2000, pet ref'd).

Furthermore, the trial court could have reasonably found that the *Wright* factors support a finding that Officer Wingate acted reasonably in stopping Bennett to determine if he needed help because Officer Wingate could have concluded that Bennett did not have access to assistance; Bennett's passenger was also involved in the accident; the accident occurred at night; and,

4

immediately after the accident, Bennett pulled into an empty parking lot.  We conclude that Officer Wingate's exercise of his community caretaking function was reasonable; therefore, the trial court did not err by denying Bennett's motion to suppress.  We overrule Bennett's sole point.

## IV.  Conclusion

Having overruled Bennett's sole point, we affirm the trial court's judgment.


BOB MCCOY
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  January 27, 2011