

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00044-CR

CLIFF DOUGLAS PARKER                                                APPELLANT

V.

THE STATE OF TEXAS                                                         STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY
TRIAL COURT NO. 1329800R

----------

## MEMORANDUM OPINION[1]

----------

Appellant Cliff Douglas Parker was charged by indictment with capital murder. The jury convicted him of the lesser included offense of manslaughter and assessed his punishment at life imprisonment. The trial court sentenced him accordingly. In a single issue, Appellant contends that the trial court reversibly erred by denying his motion to suppress his interview with a lieutenant of the fire

---

[1]*See* Tex. R. App. P. 47.4.

department and all evidence stemming from the interview. Because the trial court did not err in denying Appellant's motion to suppress, we affirm the trial court's judgment.

**Brief Facts**

Officers Lindsey Stewart and Carson Bell were dispatched to a house fire. The officers could see the flames "all the way down the block." They arrived before any other officers or firefighters. When they arrived at the scene, a woman screamed that someone was still inside the burning house. Stewart and Bell ran to the house. They saw Appellant standing on the porch, "nonchalantly" smoking a cigarette. The officers ignored Appellant and kicked the door open. As the officers entered the house, they saw an unconscious woman (Betty Roberts) lying face down on the floor.

As the officers attempted to remove Roberts from the burning house, Appellant came inside and put his hands on Stewart's back, blocking her progress and causing her to drop Roberts. Stewart pushed Appellant and resumed her attempt to remove Roberts from the burning building. Again, Appellant blocked Stewart, causing her to drop Roberts a second time. Out of concern for Bell's, Roberts's, and her own safety, Stewart pushed Appellant as hard as she could. He fell outside onto the porch. The officers were then able to remove Roberts from the house.

Once outside, the officers tried to move Roberts to a safer location. Appellant straddled Roberts and held her against the ground, blocking the

2

officers' efforts. The officers grabbed him by the shoulders and pulled him off of Roberts, and eventually they were able to move Roberts to the yard.

Stewart asked Appellant if anyone else remained in the house. He did not answer. Stewart demanded that Appellant tell her if anybody was still in the house. Finally, Appellant told her that someone was still in the back bedroom.

As the officers prepared to re-enter the house, the fire department arrived. Stewart told them that someone was still in the house. The firemen entered the house and retrieved the second person.

Another officer brought Appellant to Officer James Minter. Because of the chaos of the still-active fire scene, Minter asked Appellant to wait in the back of his police cruiser, and Appellant complied. Minter testified that he did not place Appellant under arrest. He did not handcuff Appellant; he did not tell Appellant that he was under arrest; he did not tell Appellant that he could not leave; and he would have allowed Appellant to leave had Appellant asked to do so.

About twenty-three minutes after Minter directed Appellant to wait in the police cruiser, Lieutenant Steve Larison of the Fort Worth Fire Department interviewed Appellant. In an attempt to learn details that might help his investigation and identify residents of the burning house, Larison talked to Appellant for about twenty minutes. At this point, Larison had yet to determine the cause of the fire. The cruiser's video camera recorded the interview. After more investigation, Appellant was charged with arson.

3

Roberts later died from injuries she suffered during the fire. Appellant was then re-indicted for arson-based capital murder. The trial court determined that Appellant was not in custody when the interview occurred and that the video of the interview was therefore admissible as a matter of law.

**Admissibility of the Statement**

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.[2] We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor.[3]

Appellant argues that *Miranda* warnings were required because he was subjected to custodial interrogation.[4] Additionally, code of criminal procedure article 38.22 generally precludes the use of statements resulting from custodial interrogation absent compliance with its procedural safeguards.[5]

---

[2]*Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

[3]*Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

[4]*See Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966).

[5]Tex. Code Crim. Proc. Ann. art. 38.22, § 2 (West Supp. 2014).

As the State points out, the Texas Court of Criminal Appeals has outlined four general situations which may constitute custody: (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave.[6]

The State argues that the questioning of Appellant was not custodial interrogation because, although Appellant was sitting in the back of Minter's police cruiser in what is commonly referred to as "the cage," no one had suggested that he was not free to leave; he was not handcuffed; if he had asked to leave, he would have been allowed to leave; and police and firefighters were trying to protect people and keep them safe in a chaotic, active fire scene. As Judge Cochran has explained in describing the community caretaking function, "[A police officer] is . . . expected to aid individuals who are in danger of physical harm, to assist those who cannot care for themselves, and to provide other services on an emergency basis."[7]

---

[6]*Shiflet v. State*, 732 S.W.2d 622, 629 (Tex. Crim. App. 1985).

[7]*Corbin v. State*, 85 S.W.3d 272, 280 (Tex. Crim. App. 2002) (Cochran, J., concurring) (internal quotation marks and citations omitted).

Twenty-three minutes after Appellant entered the cruiser, Larison opened its back door, knelt in front of the cruiser's open door, and interviewed Appellant as a witness to the fire. Larison inquired about Appellant's description of the events and facts known to him that might lead to additional information about the cause of the blaze and about the identification of the residents of the burning house. At that time, Appellant was not an arson suspect, and, as far as Larison knew, Appellant was free to go when Larison left the interview. Indeed, at the time of the interview, no arson investigation had begun.

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling.[8] The trial court's determination that Appellant was not in custody when he made his oral statements to Larison is supported by the record.[9] We therefore hold that the trial court did not err by denying Appellant's motion to suppress, overrule his sole issue, and affirm the trial court's judgment.

---

[8] *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

[9] *See Dowthitt v. State*, 931 S.W.2d 244, 254–56 (Tex. Crim. App. 1996).

                                                    /s/ Lee Ann Dauphinot
                                                    LEE ANN DAUPHINOT
                                                    JUSTICE

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 16, 2015