

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00343-CR

CAMERON BYRAM                                                    APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

FROM COUNTY CRIMINAL COURT NO. 1 OF TARRANT COUNTY
TRIAL COURT NO. 1332976

----------

## DISSENTING OPINION

----------

### I. Introduction

I respectfully dissent. The majority fails to view the evidence and all its reasonable inferences in the light most favorable to the trial court's denial of Appellant Cameron Byram's motion to suppress and fails in its analysis of the community-caretaking exception to conduct an objective review focusing on what Officer Figueroa observed.

## II. The Facts

At the motion-to-suppress hearing, Fort Worth Police Officer Figueroa was the only witness. He testified that on July 4, 2013, at approximately 5:30 p.m., he was patrolling the bar district in downtown Fort Worth. Because it was a holiday, there was "a lot of partying" going on and a lot of vehicle and pedestrian traffic. Officer Figueroa stopped his patrol car at a red light at the intersection of 4th Street and Houston Street. He had his windows down, and a black Chevy SUV pulled up at the light "right next" to the driver's side of Officer Figueroa's patrol car. The SUV had its passenger-side window "rolled all the way down" giving Officer Figueroa an unobscured view into the SUV. Officer Figueroa looked over at the SUV and noticed a female hunched over in the front seat. He smelled the odor of alcohol wafting from the vehicle. The female passenger was not moving and Officer Figueroa was concerned that she was unconscious, had alcohol poisoning, or possibly needed medical attention. Officer Figueroa could see the driver of the SUV and "yelled over to him," asking if the female passenger was okay. Officer Figueroa had no doubt that the SUV's driver heard him yell, but the driver ignored Officer Figueroa and "just look[ed] forward." The light turned green; the driver ignored Officer Figueroa and drove off. This raised a further concern to Officer Figueroa that the SUV driver was trying to avoid contact with police; typically, people respond to questions from police officers.

Because he was concerned about the female passenger, Officer Figueroa initiated a traffic stop at the 400 block of West 4th Street. When he approached

the driver's side of the SUV, he observed that the front-seat female passenger had vomited all over herself and the passenger side of the SUV and that she was barely conscious. Officer Figueroa determined that the passenger "had some sort of medical problem" and "immediately" called Medstar. An ambulance arrived within two minutes. Officer Figueroa determined that the SUV's driver, Byram, was intoxicated and arrested him.

### III. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). However, when the trial court's rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court's rulings on mixed questions of law and fact. *Id.* When the trial court does not make explicit findings of historical facts, as in the instant case, we review the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact supporting its ruling, so long as those findings are supported in the record. *Carmouche,* 10 S.W.3d at 327–28.

3

## IV. The Community-Caretaking Exception to the Warrant Requirement

The law is well settled that, even without reasonable suspicion or probable cause that an offense has been committed, a police officer may reasonably seize an individual through the exercise of his community-caretaking function. *See, e.g., Gonzales v. State*, 369 S.W.3d 851, 854–55 (Tex. Crim. App. 2012) (holding community-caretaking exception applied when police officer observed vehicle pull onto shoulder of road in isolated area and pulled in behind vehicle to "see if everything was okay"); *Wright v. State*, 7 S.W.3d 148, 151–52 (Tex. Crim. App. 1999) (holding community-caretaking exception applied when police officer observed front-seat passenger leaning out window of moving car and vomiting). As part of his duty to "serve and protect," a police officer may stop and assist an individual whom a reasonable person—given the totality of the circumstances—would believe is in need of help. *Wright*, 7 S.W.3d at 151.

Determining whether an officer has properly invoked the community-caretaking function is a two-step process. *Corbin v. State*, 85 S.W.3d 272, 277 (Tex. Crim. App. 2002). First, the reviewing court must determine whether the officer was primarily motivated by a community-caretaking purpose. *Id.* Second, the court must determine whether the officer's belief that assistance was required was reasonable. *Id.* Courts consider four nonexclusive factors in determining whether the officer's belief that the defendant needed help was reasonable: (1) the nature and level of the distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual was alone or had

access to assistance other than that offered by the officer; and (4) to what extent the individual, if not assisted, presented a danger to himself or others. *Id.*

## V. Analysis

Under the first prong of the community-caretaking analysis, the trial court here implicitly found that when Officer Figueroa stopped the SUV, he was primarily motivated by a community-caretaking purpose.[1]  The evidence supports this implicit finding; Officer Figueroa testified that he stopped the SUV because of his concern for the female passenger.[2]  *See id.* ("The trial court, as the exclusive judge of credibility and finder of fact, could have concluded that [the officer] was primarily motivated by community caretaking concerns.").

Under the second pong of the community-caretaking analysis, the trial court implicitly found that, given the totality of the circumstances, Officer Figueroa's belief that assistance was required was reasonable.  Viewed in the light most favorable to the trial court's ruling, the evidence presented at the suppression hearing established that at approximately 5:30 p.m. on the Fourth of July holiday, the female front-seat passenger was hunched over and not moving in a vehicle that smelled of alcohol and was being driven in the "bar district" of downtown Fort Worth by a man who was unconcerned about her condition and refused to respond to Officer Figueroa's inquiry about the woman's status.

[1]The trial court issued no express findings of fact or conclusions of law.

[2]Byram does not challenge this component of the community-caretaking exception.

5

Looking to the four nonexclusive factors to assess the reasonableness of Officer Figueroa's belief that the female passenger needed assistance, the nature and level of the female's distress was significant—she was not moving and appeared unconscious. The female's location—in a vehicle driven by a man who appeared unconcerned about her well-being—was precarious. Her access to assistance was doubtful for this same reason—the man driving the SUV exhibited no concern about his passenger in response to Officer Figueroa's query about her condition.[3] And the female was a danger to herself; she appeared comatose and incapable of asking for help. Thus, all four factors—the female's level of distress, her location, her lack of access to assistance, and the danger to herself—support the reasonableness of Officer Figueroa's belief that she needed assistance. Based on this objective analysis focusing on what Officer Figueroa observed, I would hold that the trial court properly determined that Officer Figueroa's belief that the female passenger needed assistance under his

---

[3]The majority points out that hospitals were nearby and that the female was not alone. But these two facts do not make Officer Figueroa's decision to stop the SUV less reasonable because Byram ignored Officer Figueroa's question concerning the female's condition and exhibited no concern about her, which gave rise to a reasonable inference that he had no intention of providing assistance. *See Flores v. State*, No. 04-13-00548-CR, 2014 WL 7340279, at *3 (Tex. App.—San Antonio Dec. 23, 2014, no pet.) (mem. op., not designated for publication) (holding community-caretaking exception applied when police officer observed car parked in McDonald's parking lot at 3:00 a.m. even though drive-through lane was open and employees were inside the restaurant because "there were no signs that anyone from the restaurant was assisting [the driver]").

community-caretaking responsibilities was reasonable under the totality of the circumstances. *See Gonzales,* 369 S.W.3d at 856.

Accordingly, after viewing the evidence and the reasonable inferences from the evidence in the light most favorable to the trial court's ruling, I would hold that the trial court did not abuse its discretion in determining that Officer Figueroa was primarily motivated by community-caretaking concerns and reasonably believed that assistance was required. *See, e.g., Lollie v. State*, 465 S.W.3d 312, 315–17 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (holding community-caretaking exception applied to officer's decision to pull over car driving slowly on isolated, dark road). Thus, the community-caretaking exception to the warrant requirement applied.

## VI. Conclusion

For the reasons set forth above, I would overrule Byram's sole issue and affirm the trial court's denial of his motion to suppress.[4] Because the majority does not, I dissent.

/s/ Sue Walker
SUE WALKER
JUSTICE

PUBLISH

DELIVERED: October 15, 2015

---

[4]Because I would affirm the trial court's denial of Byram's motion to suppress based on the community-caretaking exception, I would not reach the State's alternative argument that the stop was supported by reasonable suspicion.

7