COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

LUIS JURADO,                                                    )

                                                                              )              
No.  08-03-00334-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                 243rd District Court

THE STATE OF TEXAS,                                     )

                                                                              )            
of El Paso County, Texas

Appellee.                           )

                                                                              )               
(TC# 20030D00792)

                                                                              )

 

 

O
P I N I O N

 

Appellant Luis
Jurado appeals his conviction for possession of a controlled substance, to
wit:  cocaine, having an aggregate
weight, including adulterants or dilutants of less than one gram.  The trial court held a hearing to consider
Appellant=s
pretrial written motion to suppress.  On
July 7, 2003, Appellant entered a guilty plea, waiving his rights except the
right to appeal.  Appellant was sentenced
to 2 years= in the
state jail, probated for 3 years and a fine of $500.  The trial court has certified that this was a
plea-bargain case in which the Appellant raised pretrial matters by written
motion filed and ruled on before trial. 
By four issues, Appellant contends the trial court abused its discretion
in overruling his motion to suppress evidence. 
We affirm.








At the suppression
hearing, only one witness testified, Deputy Sheriff Rogelio Arreola of the El
Paso County Sheriff=s
Department, who was the arresting officer. 
On the evening of January 14, 2003, Arreola was on patrol in Fabens in
the lower valley.  He was in uniform and
driving a marked patrol car.  While
patrolling the 800 block of Southeast Johnson at about 11:30 p.m., Arreola
observed Appellant walking on the street in a very dark area heading towards
the Franklin Canal.  Arreola stated that
Appellant Awas about
to approach the canal when I saw him.@  When he saw him walking down the street,
Arreola observed that Appellant was having a hard time walking because he was
stumbling.  Arreola stopped to do a
welfare check on him.

Arreola approached
Appellant and asked him where he was going. 
He then asked Appellant for identification and Appellant produced a
Texas license.  Arreola detected an odor
of alcohol on Appellant=s
person.  Arreola stated that Appellant
had red, bloodshot eyes, slurred speech, and could not tell him where he was
going.  At that point, Arreola determined
Appellant was intoxicated.  Arreola
decided he would first ask Appellant if there was anywhere he could drop him
off and if there was not, he was going to place him under arrest.[1]  During his investigation into whether he
would arrest Appellant for public intoxication or find somewhere to take him,
Arreola recalled that Appellant told him conflicting stories.  Arreola recalled that Appellant gave him an
address and told him that he was going home, but he was walking in the opposite
direction from his home.








Arreola had
observed that Appellant had his left hand in his pocket when Arreola approached
him.  He noticed that Appellant gave him
his license with his right hand and that his left hand remained in his
pocket.  Arreola stated, AI didn=t
know what he had in his hand, in his pocket, so I asked him to pull his hand
out of his pocket.@  Appellant initially complied with the officer=s request.  Arreola then asked Appellant if he had any
drugs or weapons on him and Appellant said he did not.  Appellant then put his hand back into his
left pocket where he originally had it. 
Arreola again told Appellant to remove his hand from his pocket and
Appellant momentarily complied.

On his own,
without Arreola requesting him to do so, Appellant began placing items from
both his pockets on the hood of Arreola=s
patrol car.  After pulling out the items
in his pockets, Appellant told Arreola, A[t]his
is all I have,@ but
Arreola could still see he had items in his pocket.  He could not tell what the objects were, but
it appeared to be a large bulge.  Arreola
did not think there was a gun in Appellant=s
pocket, but he did not know if Appellant Ahad
a knife or anything else.@  Because Appellant said he had nothing else,
yet Arreola could still see something and thought he might have a weapon,
Arreola decided to pat Appellant down out of caution for his safety to see if
he had any weapons.  Arreola felt an
object in his pocket, but could not tell what it was and was not sure if it was
a weapon.








When Appellant
emptied his pockets for a second time, he pulled something out of his pocket
with his left hand, but kept his hand closed. 
Arreola ordered Appellant to show him what he had in his hand, but
Appellant refused and kept his hand clinched. 
Arreola repeated the order, but Appellant tried putting his hand in his
back pocket.  Arreola did not know if it
was a weapon or not.  He reached for and
grabbed Appellant=s arm and
pulled it back in front.  Appellant
finally opened his hand and that is when Arreola saw that he had a blue
diamond-fold in his hand, which was found to contain cocaine.  Originally, Arreola was going to place
Appellant under arrest for public intoxication because he was intoxicated, but
when he found the cocaine, Arreola arrested Appellant for possession of a
controlled substance.

MOTION
TO SUPPRESS

Standard
of Review 

A trial court=s ruling on a motion to suppress is
generally reviewed for an abuse of discretion. 
Villarreal v. State, 935 S.W.2d 134, 138 (Tex.Crim.App.
1996).  In reviewing a motion to
suppress, we must give almost total deference to the trial court=s determination of historical facts and
review de novo mixed questions of law and fact that do not turn on an
evaluation of credibility and demeanor.  State
v. Ross, 32 S.W.3d 853, 856 (Tex.Crim.App. 2000); Carmouche v. State,
10 S.W.3d 323, 327 (Tex.Crim.App. 2000); Guzman v. State, 955 S.W.2d 85,
88-9 (Tex.Crim.App. 1997).  As the trial
court made no explicit findings of historical facts in this case, the evidence
must be reviewed in a light most favorable to the trial court=s ruling.  Carmouche, 10 S.W.3d at 327-28.  The trial court=s
ruling will be upheld if it is reasonably supported by the record and is
correct on any theory of law applicable to the case.  Ross, 32 S.W.3d at 855-56.

Initial
Detention 

Appellant argues
that the sheriff deputy did not reasonably exercise his community caretaking
function when he seized and searched him. 
Specifically, Appellant asserts that the weapons frisk that Arreola
conducted cannot be justified as part of the community caretaking function of a
police officer=s
duties.  We will first address whether
the evidence concerning the initial stop supports the stop on the basis of the
community caretaking function.  








A police officer,
as part of his or her duty to serve and protect, may reasonably seize an
individual in exercise of his or her community caretaking function even though
the officer does not have reasonable suspicion or probable cause to believe
that an offense has been committed.  Corbin
v. State, 85 S.W.3d 272, 276-77 (Tex.Crim.App. 2002); Wright v. State,
7 S.W.3d 148, 151-52 (Tex.Crim.App. 1999). 
A police officer may not properly invoke his or her community caretaking
function if he or she is primarily motivated by a non‑community
caretaking purpose, such as law enforcement. 
Corbin, 85 S.W.3d at 277; Wright, 7 S.W.3d at 151.  If it is determined that an officer is
primarily motivated by his or her community caretaking function, it must then
be determined whether the officer=s
belief that the defendant needs help is reasonable. Corbin, 85 S.W.3d at
277; Wright, 7 S.W.3d at 151‑52. 
The court may consider the following four non-exclusive factors in
evaluating the reasonableness of the officer=s
belief:  (1) the nature and level of the
distress exhibited by the individual; (2) the location of the individual; (3)
whether or not the individual was alone and/or had access to assistance other
than that offered by the officer; and (4) to what extent the individual, if not
assisted, presented a danger to himself or others.  Corbin, 85 S.W.3d at 277; Wright,
7 S.W.3d at 152.  The first factor is
entitled to the greatest weight, but this factor alone is not always
dispositive.  Corbin, 85 S.W.3d at
277.  The remaining factors help to give
more definition to the first factor as the particular level of exhibited
distress may be seen as more or less serious depending on the presence or
absence of the remaining three factors.  See
id.  In addition, the Corbin
Court noted that the unique circumstance of a particular case may also swing
the balance of these factors one way or the other.  Id. at 277 n.6.








Here, Arreola
testified that he observed Appellant walking on the street in a very dark area
heading towards the Franklin Canal. 
According to Arreola, Appellant was about to approach the canal when he
saw him.  Appellant was stumbling and
having a hard time walking.  Based on
these observations, Arreola decided to do a welfare check on Appellant.  The trial court, as the exclusive judge of
credibility and fact finder, could have concluded that Arreola was primarily
motivated by community caretaking concerns. 
See Corbin, 85 S.W.3d at 277. 


Next, we determine
whether Arreola=s belief
that Appellant needed help is reasonable by considering the factors discussed
above.  The first factor, the nature and
level of the distress exhibited by Appellant, does not carry great weight.  Arreola=s
testimony does not shed much light on the distress exhibited by Appellant
except to show that Appellant was stumbling and finding it difficult to walk
down the street, which may be indicators that an individual is in distress.  The second factor, the location of Appellant,
weighs in favor of the stop.  Arreola
testified that Appellant was walking in a dark area of the street, stumbling,
and heading towards a canal.  In considering
the third factor, we observe that Arreola=s
testimony indicates that it was late in the evening, Appellant was alone, and
Appellant had no access to assistance from another than that offered by
Arreola.  The third factor weighs in
favor of the stop.  Finally, the fourth
factor also weighs in favor of the stop because according to Arreola=s testimony, Appellant was heading
towards a canal in the dark.  To some
extent, if not assisted, Appellant would have posed a danger to himself.  Weighing these factors, we conclude that
Arreola was justified under his community caretaking function to detain
Appellant to see if he needed help.

Weapons
Search

Appellant also
challenges the lawfulness of Arreola=s
conduct under the theories that Arreola=s
warrantless search of Appellant exceeded the scope of a protective Terry
frisk, that Arreola lacked probable cause for an evidentiary search, and that
Arreola lacked probable cause to arrest for public intoxication, therefore the
search was not lawful as a search incident to arrest.








Under Terry v.
Ohio, during an investigatory stop an officer may conduct a limited search
for weapons of a suspect=s
outer clothing when the officer has reason to believe that the suspect might be
armed and dangerous, even in the absence of probable cause to arrest the
individual for a crime.  See Terry v.
Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968); Carmouche,
10 S.W.3d at 329.  AThe purpose of this limited search is
not to discover evidence of crime, but to allow the officer to pursue his
investigation without fear of violence . . . .@   Balentine v. State, 71 S.W.3d 763,
769 (Tex.Crim.App. 2002), quoting Adams v. Williams, 407 U.S. 143, 146,
92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). 
The officer need not be certain that the suspect is armed; Athe issue is whether a reasonably
prudent man in the circumstances would be warranted in the belief that his
safety or that of others was in danger.@  Terry, 392 U.S. at 27; 88 S.Ct. at
1883.  Such a Aweapons
frisk@ is
justified only where the officer can point to specific and articulable facts
which reasonably led him to conclude that the suspect might possess a
weapon.  Balentine, 71 S.W.3d at
769.  The officer need not be absolutely
certain that an individual is armed; the issue is whether a reasonably prudent
person would justifiably believe that he or others were in danger.  Id., citing O=Hara v. State, 27 S.W.3d 548, 551
(Tex.Crim.App. 2000).  The timing of a
protective search is not dispositive in evaluating its reasonableness.  Id. 








Here, Arreola
testified that during the course of his investigation into whether to arrest
Appellant for public intoxication, he observed that Appellant kept his left
hand in his pocket.  He asked Appellant
to take his hand out of his pocket. 
Appellant complied with the officer=s
request, but then put his hand back into his left pocket again.  Arreola asked again for Appellant to remove
his hand from his pocket, and Appellant momentarily complied with the request.  On his own, Appellant began taking items from
both his pockets and placing them on the hood of the patrol car.  Appellant represented to Arreola that these
removed items were all that he had in his pockets, but Arreola could see that
Appellant had a large bulge in his pocket. 
Arreola thought Appellant might have a weapon because he could see that
some object remained in Appellant=s
pocket despite Appellant=s
contradictory statement.  Arreola
testified that he conducted a pat down search at that point out of concern for
his safety.  Arreola felt an object, but
was not sure if it was a weapon.  Based
on Appellant=s furtive
and contradictory behavior, the circumstances surrounding the encounter, the
officer=s safety
concerns, and his belief that the large bulge could have been a weapon, Arreola
had specific and articulable facts which led him to a reasonable belief that
Appellant might be armed and dangerous.  See
Carmouche, 10 S.W.3d at 329.








Appellant argues
that the frisk exceeded a reasonable scope when Arreola Aordered
appellant to remove all the objects in appellant=s
pocket.@  Viewing the evidence in the light most
favorable to the trial court=s
ruling, the record only indicates that Appellant emptied his pockets a second
time.  However, when Appellant pulled
something out of his pocket and kept his hand closed, Arreola ordered Appellant
to open his hand, which raises a question about the scope of the search.  When Arreola repeated his order, Appellant
put his arm behind his back and tried to put his hand into his back
pocket.  Arreola grabbed Appellant=s arm and pulled it back in front and
Appellant then opened his hand.  A
reasonably prudent person under the circumstances would have still justifiably
believed that he was in danger or that Appellant may have had a weapon when
Appellant took evasive action to hide what he had taken out of his front
pocket.  Therefore, we conclude that the
search was a valid Terry frisk that did not exceed the scope of that
which was necessary to determined whether Appellant possessed a weapon.  Since the trial court=s
ruling can be upheld on the applicable theories of law discussed above, we
overrule all of Appellant=s
issues for review.

The trial court=s judgment is affirmed.

 

December
16, 2004

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
Arreola explained that when an officer determines that a subject is
intoxicated, the Department leaves it up to individual officers to decide
whether to place the subject under arrest or to find somewhere where the
subject could go or somebody that will be responsible for the subject rather
than proceeding with the arrest.  Arreola
stated that it was standard procedure to first search the subject for safety
purposes before letting the individual into the patrol vehicle.