In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00033-CR
______________________________


MATTHEW CLARK TAYLOR, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 7th Judicial District Court
Smith County, Texas
Trial Court No. 007-2049-03


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â Â After hearing what Matthew Clark Taylor asserts was hearsay evidence, a jury found Taylor
guilty Â of Â the Â offense Â of Â failing Â to Â register Â as Â a Â sex Â offender. Â See Â Tex. Â Code Â Crim. Â Proc.
Ann. art. 62.051 (Vernon Supp. 2005). The trial court set Taylor's punishment at ten years'
imprisonment. On appeal, Taylor contends the trial court erred by admitting hearsay into evidence,
thereby denying Taylor the right to confront


 and cross-examine the purported declarant, in violation
of Crawford v. Washington, 541 U.S. 36 (2004). The State asserts Taylor did not preserve this issue
for appellate review. We affirm the trial court's judgment because Taylor's trial objection was not
sufficiently specific to preserve a Confrontation Clause error.
Â Â Â Â Â Â Â Â Â Â Â Â Taylor made the following objection before the trial court:
Â Â Â Â Â Â Â Â Â Â Â Â Your Honor, I do have one matter. I understand that the only State's witness
that's a civilian is not actually under subpoena. It's my understanding, from looking
at the discovery, that she's the only one with personal knowledge of anything about
this case.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â So I know what's going to be coming up is going to be a lot of hearsay
objections, so I would like an oral motion in limine


 so that the State not go into
anything about what this Tracy Santana may have said to a police officer during their
opening statements, since that will probably not be allowed during the trial.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Also, that they not ask any type of questions that would lead to a hearsay
response from the officer.
Â 
(Emphasis added.) Thus, it appeared that Taylor's objection was initially based strictly on our rule
of evidence prohibiting hearsay. See Tex. R. Evid. 802. Later, continuing to argue the same
objection, Taylor told the trial court:
Â Â Â Â Â Â Â Â Â Â Â Â And I just cannot imagine any way the State can get around this as being
hearsay. It comes straight from -- at least the discovery says straight from my client's
mother that says, "He has not lived here in three or four months; he's living with his
sister," and gives an address. I just cannot imagine how that cannot be hearsay.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â . . . .
Â 
Â Â Â Â Â Â Â Â Â Â Â Â I believe we had something very similar to this last week in the trial that I had
in here where the witness was not subpoenaed, and the witness that was not
subpoenaed was not -- the officer was not allowed to repeat anything that the witness
said.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â We even tried the excited utterance and the presen[t sense impression], and,
of course, that's not part of this. But that officer was not allowed to go into anything
that that person said.
Â 
(Emphasis added.) The court, the prosecutor, and defense counsel continue discussing the issue for
another seven pages of the reporter's recordâchiefly over whether the testimony sought to be
solicited by the State would truly be offered for the truth of the matter assertedâbefore defense
counsel finally stated:
And you say how could -- how could the State ever prove the case? Well, by
bringing in the person so that we have the right to confront them and to cross-examine them.
Â 
And that's the reason that hearsay is not allowed, because if hearsay was
allowed in all these cases, you wouldn't need a defense attorney because there would
be no one -- you couldn't test their knowledge. There wouldn't be anybody here. 
There would only be police officers here every trial. And that's what it looks like it's
going to be in this trial.

Â Â Â Â Â Â Â Â Â Â Â Â To preserve a complaint for appellate review, the party must state the grounds for the desired
ruling from the trial court "with sufficient specificity to make the trial court aware of the complaint,
unless the specific grounds [are] apparent from the context . . . ." Tex. R. App. P. 33.1(a)(1)(A);
Reyna v. State, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005).


 This is to give the trial court an
opportunity to rule on the appellant's appellate rationale. Reyna, 168 S.W.3d at 178 (citing Clark v.
State, 881 S.W.2d 682, 694 (Tex. Crim. App. 1994)). It is also to give the trial court the opportunity
to correct the error or remove the basis for the objection. Reyna, 168 S.W.3d at 179 (citing Martinez
v. State, 22 S.W.3d 504, 507 (Tex. Crim. App. 2000)). When a single objection "encompasses
complaints under both the Texas Rules of Evidence and the Confrontation Clause, the objection is
not sufficiently specific to preserve error." Reyna, 168 S.W.3d at 179 (citing Cantu v. State, 939
S.W.2d 627, 634 (Tex. Crim. App. 1997)). When an objection is based on hearsay, that objection
does not preserve a Clause error. Reyna, 168 S.W.3d at 179 (citing Paredes v. State, 129 S.W.3d
530, 535 (Tex. Crim. App. 2004)). Based on these authorities, we believe no Confrontation Clause
error was preserved.
Â Â Â Â Â Â Â Â Â Â Â Â As in Reyna, Taylor's arguments to the trial court addressed a traditional hearsay objection
under our rules of evidence. Arguably, but only tangentially, while arguing his hearsay objection,
Taylor briefly touched on a claim that the evidence's admission violated the Confrontation Clause. 
Under the precedent set forth by the Texas Court of Criminal Appeals in Reyna, because Taylor's
objection involved, at most, a hybrid argument raising complaints under both federal and state rules,
we hold this issue has not been preserved for our review. And, given the many pages of discussion
concerning Taylor's sole objection, the constant focus of that discussion on hearsay, and the
extremely brief, tangential reference to confrontation embedded in the extensive hearsay discussion,
we believe the trial court was not given any real opportunity to rule on the admissibility of evidence
based on the Confrontation Clause. Accordingly, we overrule Taylor's sole point of error.
Â Â Â Â Â Â Â Â Â Â Â Â We affirm the trial court's judgment.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Josh R. Morriss, III
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â January 6, 2006
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â January 13, 2006

Do Not Publish



o-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoFootnoteTextCxSpFirst, li.MsoFootnoteTextCxSpFirst, div.MsoFootnoteTextCxSpFirst
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoFootnoteTextCxSpMiddle, li.MsoFootnoteTextCxSpMiddle, div.MsoFootnoteTextCxSpMiddle
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoFootnoteTextCxSpLast, li.MsoFootnoteTextCxSpLast, div.MsoFootnoteTextCxSpLast
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoHeader, li.MsoHeader, div.MsoHeader
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Header Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 tab-stops:center 3.25in right 6.5in;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
p.MsoFooter, li.MsoFooter, div.MsoFooter
 {mso-style-priority:99;
 mso-style-link:"Footer Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 tab-stops:center 3.25in right 6.5in;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-bidi-font-family:Tahoma;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("6-09-238-CR%20Travis%20v.%20State%20Opinion%20mtd_files/header.htm") fs;
 mso-footnote-continuation-separator:url("6-09-238-CR%20Travis%20v.%20State%20Opinion%20mtd_files/header.htm") fcs;
 mso-endnote-separator:url("6-09-238-CR%20Travis%20v.%20State%20Opinion%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("6-09-238-CR%20Travis%20v.%20State%20Opinion%20mtd_files/header.htm") ecs;}
@page Section1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-09-238-CR%20Travis%20v.%20State%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-09-238-CR%20Travis%20v.%20State%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-09-238-CR%20Travis%20v.%20State%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-09-238-CR%20Travis%20v.%20State%20Opinion%20mtd_files/header.htm") f1;
 mso-first-header:url("6-09-238-CR%20Travis%20v.%20State%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-09-238-CR%20Travis%20v.%20State%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.Section1
 {page:Section1;}
@page Section2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-09-238-CR%20Travis%20v.%20State%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-09-238-CR%20Travis%20v.%20State%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-09-238-CR%20Travis%20v.%20State%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-09-238-CR%20Travis%20v.%20State%20Opinion%20mtd_files/header.htm") f2;
 mso-first-header:url("6-09-238-CR%20Travis%20v.%20State%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-09-238-CR%20Travis%20v.%20State%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.Section2
 {page:Section2;}
-->











 
 
 
 
 
 
 




Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

 In
The

   Court
of Appeals

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Sixth
Appellate District of Texas at Texarkana

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  No. 06-09-00238-CR

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  WILLIAM BARRY TRAVIS,
Appellant

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  V.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  THE STATE OF TEXAS, Appellee

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  On Appeal from the County Court at Law

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Cherokee
County, Texas

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Trial
Court No. 48393

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Before Morriss, C.J.,
Carter and Moseley, JJ.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Opinion by Chief Justice Morriss








Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  O P I N I O N

Â 

Â Â Â Â Â Â Â Â Â Â Â  The small
white pickup truck driven by William Barry Travis in Cherokee County[1]
was not seen violating any traffic law or exhibiting any signs that the driver
was intoxicated or otherwise in distress, when Officer Matthew Poole saw,
followed, and ultimately stopped it.Â 
Poole was acting on an earlier telephoned report that Travis had been
intoxicated when he assaulted his brother and left the scene driving a small,
white pickup truck.Â  As a result of the
stop, Poole discovered evidence suggesting that, in fact, Travis was
intoxicated.

Â Â Â Â Â Â Â Â Â Â Â  Travis argued
to the trial court that the stop was improper and that, therefore, the evidence
should be suppressed.Â  After the trial
court overruled TravisÂ motion to suppress the evidence, Travis was convicted
of DWI and sentenced to 180 daysÂ confinement and a $2,000.00 fine.Â  On appeal, Travis continues his
argument.Â  Because we agree, we reverse
the judgment and remand this case to the trial court for further proceedings
consistent with this opinion.

Â Â Â Â Â Â Â Â Â Â Â  Poole
received a call from TravisÂ brother Âclaiming that he had assaulted him . . .
[and] that [Travis] had left the scene and was intoxicated.ÂÂ  TravisÂ brother did not want to press
charges, and no warrant was obtained.Â 
Poole was patrolling one or two hours later when he heard that Âan
elderly subject,[2] [was] possibly
passed out behind the wheel ofÂ a Âsmall white pickup.ÂÂ  Poole was dispatched to Farm-to-Market 344
and 346 Âas a welfare concern.ÂÂ  Because
TravisÂ brother said Travis left in Âhis white, Chevrolet S-10 pickup,Â Poole
thought the welfare concern could be a Â10-56,Â that is, a possible
intoxication case.Â  

Â Â Â Â Â Â Â Â Â Â Â  While he was
in route to his dispatch destination, Poole was passed by a white Chevrolet
S-10 pickup.Â  He turned around Âand
pursued it, to seeÂyou know, to investigate further whether it would be the
vehicle I was looking for.ÂÂ  Poole did
not see any sign of distress from the driver and did not believe him to be a
danger to himself or others.Â  Travis
violated no speeding or other traffic law.Â 
Poole testified he had no articulable facts to lead him to stop the car
based on a reasonable suspicion of DWI.Â 
Nevertheless, Poole continued to follow Travis and ran a records check
on the vehicle registration.Â  Poole
concluded Âthat this was going to be the person related to the disturbance
earlier in the day,Â and believed Âit was apparent that this was going to be
probably the vehicle that I was in route to check on.ÂÂ  Thus, he signaled for Travis to pull over. 

Â Â Â Â Â Â Â Â Â Â Â  Travis
sought to suppress PooleÂs testimony that Travis smelled of alcohol, had
glassy, bloodshot eyes, was harboring a Natural Light on his vehicle
floorboard, and admitted to drinking four or more beers.[3]Â  The trial court found that Poole did not have
reasonable suspicion to stop Travis for DWI, and this finding is not disputed
by any party.[4]Â  The issue on appeal is whether the trial
court erred in impliedly finding that the community caretaker exception applied
to justify the traffic stop.[5]Â  We hold that the caretaker exception did not
apply.

Â Â Â Â Â Â Â Â Â Â Â  In reviewing a trial courtÂs
ruling on a motion to suppress, we give almost total deference to the trial
courtÂs determination of historical facts and review de novo any questions of
law concerning the search and seizure. Â Carmouche v. State, 10 S.W.3d 323, 327
(Tex. Crim. App. 2000). Â We will sustain
the admission of the evidence if admission is reasonably supported by the
record and correct on any theory of law applicable to the case. Â Laney v.
State, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003); Willover v. State, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). 

Â Â Â Â Â Â Â Â Â Â Â  The
Fourth Amendment prohibits Âunreasonable searches and seizures.Â U.S. Const. amend. IV.Â  This prohibition extends to Âbrief
investigatory stops such as the stop of [a] vehicle.Â United States v. Cortez, 449 U.S. 411, 417 (1981); see Corbin v. State, 85 S.W.3d 272, 276
(Tex. Crim. App. 2002).Â  Such a stop must
be objectively reasonable in light of the particular circumstances of the
case.Â  Maryland v. Wilson, 519 U.S. 408, 411 (1997); Terry v. Ohio, 392 U.S. 1, 21Â22 (1968); Corbin, 85 S.W.3d at 276. Â Reasonableness depends on Âa balance between
the public interest and the individualÂs right to personal security free from
arbitrary interference by law enforcement.ÂÂ 
Corbin, 85 S.W.3d at 276 (quoting Wilson, 519 U.S. at 411).Â  A seizure based on reasonable suspicion will
generally be reasonable; however, the trial court explicitly ruled that Poole
did not have reasonable suspicion to stop Travis.[6]Â  Id.

Â Â Â Â Â Â Â Â Â Â Â  In certain
circumstances, a police officer may reasonably seize an individual through the
exercise of the community caretaking function even without reasonable suspicion
or probable cause that an offense has been committed. Â Id. (citing Wright v. State, 7 S.W.3d 148, 151Â52
(Tex. Crim. App. 1999); see Cady v.
Dombrowski, 413 U.S. 433, 441 (1973).Â 
As part of an officerÂs duty to Âserve and protect,Â an officer Âmay
stop and assist an individual whom a reasonable person, given the totality of
the circumstances, would believe is in need of help.ÂÂ  Id. (citing Wright, 7 S.W.3d at 151); Bilyeu v. State, 136 S.W.3d 691, 698
(Tex. App.ÂTexarkana 2004, no pet.).Â 
This exception to the warrant requirement has Ânarrow applicability.ÂÂ  Laney,
117 S.W.3d at 859.

Â Â Â Â Â Â Â Â Â Â Â  The
community caretaking exception cannot be used if the officer is primarily
motivated by a different purpose, such as law enforcement.Â  Corbin,
85 S.W.3d at 276. Â The record reflects
that Poole stopped Travis Âto check the welfare of the driverÂ based on a
possible Âmedical or intoxicationÂ problem.Â 
The trial court, as the exclusive judge of credibility and the fact-finder,
could have concluded Poole was primarily motivated by community caretaking
concerns.Â  Id. at 277.Â  Given that determination,
we examine whether PooleÂs belief that Travis needed help is reasonable by
looking at four factors:

(1) the
nature and level of the distress exhibited by the individual; (2) the location
of the individual; (3) whether or not the individual was alone and/or had
access to assistance other than that offered by the officer; and (4) to what
extent theÂ individual, if not assisted, presented a danger to himself or
others.

Â 

Id. (quoting Wright, 7 S.W.3d at 151Â52).

Â 

Â Â Â Â Â Â Â Â Â Â Â  Since Âthe
purpose of the community caretaking exception is to allow an officer to ÂseizeÂ
and assist an individual whom he reasonably believes is in need of help, the
first factor is entitled to the greatest weight.ÂÂ  Id.Â  In this case, this factor undeniably weighs
against admission since Poole testified Travis did not appear to be in distress.Â  See id.
at 277Â78.Â  Although there is record
evidence that Travis was driving on a county road suggesting isolation, he may
have been close to an intersection.Â  It
is the StateÂs burden to demonstrate the reasonableness of the stop.Â  State
v. Dixon, 151 S.W.3d 271, 273 (Tex. App.ÂTexarkana 2004), affÂd, 206 S.W.3d 587 (Tex. Crim. App.
2006).Â  We find this factor to be
neutral.Â  See Corbin, 85 S.W.3d at 278.Â  Poole testified Travis was alone,
indicating that he did not have access to assistance.Â  However, because Travis was not distressed, there
is not much weight to this factor.Â  In
regard to the fourth factor, Poole testified he had no reason to believe Travis
was a danger to himself or others.Â 
Nevertheless, Poole stopped Travis Âto check his current state, his
welfare, to make sure he is okay.ÂÂ  While
the trial court was free to consider PooleÂs subjective concern, we find PooleÂs
belief that Travis required aid objectively unreasonable.Â  Therefore, the narrow community caretaker
exception did not justify PooleÂs stop.Â  Thus,
TravisÂ Fourth Amendment rights were violated. 

Â Â Â Â Â Â Â Â Â Â Â  Having found
constitutional error, we must conduct a harm analysis to determine whether it
calls for reversal of the judgment.Â  Tex. R. App. P. 44.2.Â  To determine whether prejudice occurred by
the introduction of improperly admitted evidence at trial, we evaluate the
entire record in a neutral manner, and must reverse unless we determine Âbeyond
a reasonable doubt that error did not contribute to the conviction or
punishment.ÂÂ  Id.Â  Here, the only evidence
that Poole was DWI came from PooleÂs testimony of events occurring after the
traffic stop.Â  Without the evidence which
should have been suppressed, nothing in the record would prove Travis drove
while legally intoxicated.Â  After carefully
reviewing the record and performing the required harm analysis under Rule
44.2(a) of the Texas Rules of Appellate Procedure, we are unable to determine
beyond a reasonable doubt that the trial courtÂs denial of TravisÂ motion to
suppress did not contribute to his conviction or punishment. Â Accordingly, we sustain TravisÂ first point of
error.

Â Â Â Â Â Â Â Â Â Â Â  We reverse
the trial courtÂs judgment and remand this case to the trial court for further
proceedings consistent with this opinion.

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Josh
R. Morriss, III

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Chief
Justice

Â 

Date Submitted:Â Â Â Â Â Â Â Â Â  July
19, 2010

Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â  August
5, 2010

Â 

Publish

Â 











[1]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization
efforts.Â  See Tex. GovÂt Code Ann.
Â§ 73.001 (Vernon 2005).Â  We are unaware
of any conflict between precedent of the Twelfth Court of Appeals and that of
this Court on any relevant issue.Â  See Tex.
R. App. P. 41.3.

Â 





[2]The
record lists TravisÂ birthdate as August 12, 1951, making him fifty-six years
old at the time of the offense.Â  While
admittedly age categorizations can depend on oneÂs perspective, we doubt the
reference to an Âelderly subjectÂ referred to Travis.





[3]Travis
contends that the evidence would be legally and factually insufficient for a
jury to render a verdict of guilt if this evidence was suppressed.Â  However, in reviewing legal and factual
sufficiency, we consider all of the evidence, whether improperly admitted or
not.Â  Berry
v. State, 233 S.W.3d 847, 854 (Tex. Crim. App. 2007); Conner v. State, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001).Â  From the record, it is clear that a rational
jury, as a finder of fact, could have found beyond a reasonable doubt the
essential elements of DWI and that the verdict was not manifestly unjust,
shocking to the conscience, or demonstrative of bias.Â  See Jackson
v. Virginia, 443 U.S. 307, 318Â19 (1979); Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); Watson v. State, 204 S.W.3d 404, 415 (Tex.
Crim. App. 2006).

Â 





[4]As
finder of fact, the trial court was free to disbelieve PooleÂs testimony of
statements made by TravisÂ brother.

Â 





[5]There
is no ruling on the record regarding the community caretaker exception.Â  However, because evidence subject to the
motion to suppress was admitted in front of the jury, we conclude that the
trial court impliedly ruled the community caretaker exception applied.





[6]Poole
explained that he did not have any articulable facts that would lead to a
reasonable suspicion that Travis was DWI, that he did not pull Travis over in
suspicion of DWI, and that no traffic laws were violated.