

# IN THE
# TENTH COURT OF APPEALS

## No. 10-10-00422-CR

**CONNER LYNNE TROUTT,**

                                                        **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                        **Appellee**

---

**From the 249th District Court**
**Johnson County, Texas**
**Trial Court No. F44069**

---

## MEMORANDUM OPINION

---

The jury convicted Conner Lynne Troutt of aggravated assault of a family member using a deadly weapon. TEX. PENAL CODE ANN. 22.02(b) (1) (West 2011). The jury assessed his punishment at 40 years confinement. We affirm.

### Background Facts

Conner Troutt does not challenge the sufficiency of the evidence to support his conviction. Therefore, we will set out only a brief summary of the facts. At the time of the offense, Conner was seventeen years old and lived with his mother, Donna Troutt.

Conner had been in jail for a prior assault on Donna and had been released the day before. He was angry because Donna did not come pick him up when he was released from jail and was forced to walk home. The next day, Conner got into an argument with this mother and hit her multiple times with an aluminum baseball bat causing serious, permanent injury. Conner's sister heard her mother screaming and went to the see what happened. She saw Conner by their mother with a baseball bat, and she screamed "no." Conner then hit their mother another time in the face with the bat. Conner's sister realized that her mother was choking and had to reach into her mouth and pull her shattered jawbone from the back of her throat.

Conner fled the scene in his mother's vehicle and crashed into a guardrail on Interstate 20 in Tarrant County. Conner got out of the wrecked vehicle, ran into the traffic, and then jumped in front of a red Mustang. The car hit Conner sending him up into the air and flipping him a couple of times. Conner got up and walked up an exit ramp. A police officer observed the entire accident, and he followed Conner to check on his condition.

### Motion to Suppress

In his first issue on appeal, Conner argues that the trial court erred in denying his motion to suppress. In reviewing a trial court's ruling on a motion to suppress, appellate courts must give great deference to the trial court's findings of historical facts as long as the record supports the findings. *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997). Because the trial court is the exclusive fact finder, the appellate court reviews evidence adduced at the suppression hearing in the light most favorable to the

trial court's ruling. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We also give deference to the trial court's rulings on mixed questions of law and fact when those rulings turn on an evaluation of credibility and demeanor. *Guzman v. State*, supra. Where such rulings do not turn on an evaluation of credibility and demeanor, we review the trial court's actions de novo. *Guzman v. State*, supra; *Davila v. State*, 4 S.W.3d 844, 847-48 (Tex.App.—Eastland 1999, no pet'n). We review questions involving legal principles and the application of law to established facts de novo. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004).

Officer Jason Spradlin testified at the hearing on Conner's motion to suppress that he observed Conner's vehicle in a traffic accident on the interstate. He saw Conner get hit by the red Mustang and flip up into the air. Officer Spradlin got out of his patrol vehicle and pursued Conner on foot to check on his condition. When he caught up with Conner, Officer Spradlin asked him to sit down.

Officer Spradlin then asked Conner if he needed any help. Conner replied that "he just wanted to kill himself, he just didn't want to live anymore." Officer Spradlin asked why, and Conner said "he didn't want to live because he had just killed his mother and he didn't want to go to jail for the rest of his life."

Officer Marshal Meyer arrived on the scene and saw Officer Spradlin talking to Conner. Officer Meyer observed deep cuts on Conner's neck and wrists that were bleeding. He asked Conner what happened. Conner said that he tried to kill himself. Conner told Officer Meyer he had attempted to drive his vehicle into other vehicles and that he intentionally hit the guard rail on the interstate. Conner said that he tried to kill

himself because he was going to jail for a long time. Officer Meyer asked why he was going to jail, and Conner responded that he killed his mother. After verifying that an assault had occurred at Conner's residence, Officer Meyer placed Conner in handcuffs.

Officer Meyer rode in the ambulance with Conner. In the ambulance, Conner began talking about the offense. Officer Meyer read the *Miranda*[1] warnings to Conner. Conner said that he needed a lawyer.

Conner argues that he was under arrest at the moment Officer Spradlin asked him to sit down. He contends that all statements he made were the result of custodial interrogation and should have been suppressed.

The community caretaking exception allows police officers, as part of their duty to "serve and protect," to stop or temporarily detain an individual whom a reasonable person would believe is in need of help, given the totality of circumstances. *Wright v. State*, 7 S.W.3d 148, 151 (Tex. Crim. App. 1999). Determining whether an officer has properly invoked the community caretaking function is a two-step process. *Corbin v. State*, 85 S.W.3d 272, 277 (Tex. Crim. App. 2002). First, the reviewing court must determine whether the officer was primarily motivated by a community caretaking purpose. *Id*. Second, the court must determine whether the officer's belief that assistance was required was reasonable. *Id*. Courts consider four non-exclusive factors in determining whether the officer's belief that the defendant needed help was reasonable: (1) the nature and level of the distress exhibited by the individual; (2) the

---

[1] *Miranda v Arizona*, 384 U.S. 436 (1966).

location of the individual; (3) whether or not the individual was alone and/or had access to assistance other than that offered by the officer; and (4) to what extent the individual, if not assisted, presented a danger to himself or others. *Id.*

Officer Spradlin observed Conner run in front of traffic on the interstate, jump in front of an oncoming car, and get hit by the car. Conner was possibly seriously injured and walking alone near the interstate. Officer Spradlin believed Conner might need medical attention. Officer Spradlin followed Conner to check on his condition. The record supports a finding that when he asked Conner to sit down, Officer Spradlin was primarily motivated by a community caretaking function, and that his belief was reasonable.

The officers asked Conner if he needed help. Conner's statements in response that he wanted to kill himself, that he had just killed his mother, and that he did not want to go to jail were not the result of custodial interrogation. The officers were not aware that Conner had been involved in an assault. After confirming an assault, Officer Meyers read the *Miranda* warnings to Meyer. The trial court did not err in denying Conner's motion to suppress. We overrule Conner's first issue on appeal.

## Ineffective Assistance of Counsel

In his second and third issues on appeal, Conner argues that he received ineffective assistance of counsel. To determine if trial counsel rendered ineffective assistance, we must first determine whether Conner has shown that counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that the result would have been

different but for counsel's errors. *Strickland v. Washington*, 466 U.S. 668, (1984). We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and Conner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Stafford v. State*, 813 S.W.2d 503, 508-09 (Tex. Crim. App. 1991). An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).

Conner argues in his second issue on appeal that his trial counsel was ineffective for repeatedly informing the jury that he was "appointed" counsel. He argues that by referring to himself as appointed counsel, trial counsel "insulated" himself from Conner to let the jury know he did not represent Conner by choice. During voir dire, trial counsel introduced himself and stated he was appointed to represent Conner. Trial counsel also introduced himself during trial to some witnesses and stated he was appointed to represent Conner.

The record is silent as to trial counsel's reason for referring to himself as appointed counsel. There is no indication the reference was made in a derogatory manner or that trial counsel sought to distance himself from Conner. Generally, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *See Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). We overrule Conner's second issue on appeal.

In his third issue, Conner complains that his trial counsel was ineffective for failing to have an expert appointed to develop the theory of the case. Conner argues that his theory was to show his mother had physically and emotionally abused him for many years. He contends that the abuse caused him to "snap" and assault his mother.

The trial court entered an order appointing a psychiatrist or psychologist to examine Conner. The order sought a determination whether Conner was competent to stand trial, whether Conner was mentally ill requiring treatment for his own protection or the protection of others, and whether Conner was mentally impaired. The examining psychologist determined that Conner was competent to stand trial. He further found Conner has mental illness that is not severe and that he is not mentally impaired.

Trial counsel offered testimony concerning the abusive relationship between Conner and his mother. There is nothing in the record to suggest an insanity defense would have been successful. Conner has not overcome the presumption that trial counsel's actions were based upon trial strategy. *Rylander v. State*, 101 S.W.3d at 110. This appears to be more of a case of ineffective assistance of client. Indeed, given the horrific facts and evidence, we are unable to say a result much better than a 40 year sentence would have resulted but for counsel's alleged errors or any other conceivable trial strategy. We overrule the third issue on appeal.

## Conclusion

We affirm the trial court's judgment.


AL SCOGGINS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirm
Opinion delivered and filed July 6, 2011
Do not publish
[CRPM]