

# IN THE
# TENTH COURT OF APPEALS

### No. 10-11-00430-CR

**CARLYLE CHRISTENSEN, II,**

                                                                        **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                                        **Appellee**

### From the County Court at Law No. 2
### Brazos County, Texas
### Trial Court No. 08-03083-CRM-CCL2

## MEMORANDUM  OPINION

Appellant Carlyle Christensen pleaded guilty to the misdemeanor offense of driving while intoxicated.  The trial court assessed his punishment at 180 days' confinement in the Brazos County Jail and a $2,000 fine but suspended the confinement and placed Christensen on community supervision for one year.  This appeal ensued. In his sole issue, Christensen contends that the trial court abused its discretion in overruling his pretrial motion to suppress because the officer did not have reasonable suspicion to detain him.  Christensen argues that the traffic control device warning

traffic of a one-way roadway did not give him sufficient notice and did not comply with the Texas Uniform Traffic Control Device Manual.

Christensen filed several motions to suppress in this case. He filed a motion to suppress any statements that he made as the result of custodial interrogation, arguing in part that his initial stop and subsequent arrest were "without legal justification or reasonable suspicion and without valid warrant and any statement resulting thereof is a fruit of the illegal stop and arrest." Christensen filed a motion to suppress "all observations and opinions flowing from said stop," arguing that the initial stop was made without probable cause or reasonable suspicion, that the arrest was made without probable cause, and that all observations and opinions flowing from the stop were therefore fruit of the illegal stop and seizure. Christensen also filed a motion to suppress the audio and visual portions of any videotape conducted in this cause, arguing in part that the arrest and stop were without proper justification.[1]

The trial court held a hearing on "the Motion to Suppress the stop." The State stipulated that this was a warrantless arrest. Texas A & M University Police Officer Park Knight then testified that on Sunday, April 6, 2008, at about 2:30 a.m., he noticed Christensen's vehicle traveling in excess of the twenty-mile-an-hour speed limit on a road closed to through traffic. The only driveway on the road that was accessible at that time was the chemistry building, and Christensen had gone past it. Officer Knight stated that Christensen had to brake very hard to stop from hitting a barricade and

---

[1] Christensen also filed a motion to suppress his refusal of the breath or blood test, but his argument in support of such motion did not involve the legality of the stop.

going into the ditch. Christensen then turned around and headed back in Officer Knight's direction. Officer Knight said that when Christensen passed him, he followed him because he felt that Christensen's driving was reckless and that there was a possibility that Christensen was intoxicated. Once Officer Knight was following Christensen, Christensen put on his blinker and turned southbound onto Ireland Street, a one-way northbound street. There were no signs indicating that a turn onto the one-way street was prohibited, but Officer Knight testified that there were three signs indicating that it was a one-way street: two "Do Not Enter" signs, one on either side of the road, and a "One Way/Stop" sign. Officer Knight stated that it is also part of his job as a police officer to make sure people are safe and that it is not safe for someone to be driving the wrong way down a one-way street because there are no traffic control devices designed for people traveling the wrong way on that street. Officer Knight further explained, "If he had gotten to University Drive, there would not have been a red light or any kind of warning for him to stop." Officer Knight also testified that Northgate, a bar district, is at the very end of Ireland Street and that closing hour is two o'clock in the morning. Officer Knight thus stopped Christensen because he was travelling the wrong way on a one-way street. A video recording of the stop was admitted into evidence.

Christensen's counsel argued that in the absence of an additional sign prohibiting a right turn onto Ireland Street, the three signs were not sufficient to provide notice that the street was one-way. The trial court agreed, noting that "that probably doesn't amount to an offense without more correct signage" and that if

Christensen were on trial for driving the wrong way, he would be found not guilty because of lack of proper notice. The trial court nevertheless overruled the motion to suppress, stating that "the University's failure to follow the Traffic Code more closely doesn't release the officer from trying to keep those streets safe in the early a.m. on a Saturday night."

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor; and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002). Where, as here, no findings of fact were filed by the trial court, we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported

by the record.  *Ross*, 32 S.W.3d at 855.  But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo.  *Amador*, 221 S.W.3d at 673; *Johnson*, 68 S.W.3d at 652-53.

Under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the police can stop and briefly detain a person for investigative purposes if they have a reasonable suspicion supported by articulable facts that criminal activity may be afoot.  *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (citing *Terry*, 392 U.S. at 30).  Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity.  *Ford v. State*, 158 S.W.3d 488, 492-93 (Tex. Crim. App. 2005).  But even without having reasonable suspicion or probable cause that an offense has been committed, a police officer may reasonably seize an individual through the exercise of his community-caretaking function.  *Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002).  In this case, as explained below, Officer Knight reasonably seized Christensen through the exercise of his community-caretaking function.

As part of an officer's duty to "serve and protect," an officer "may stop and assist an individual whom a reasonable person, given the totality of the circumstances, would believe *is in need of help*."  *Wright v. State*, 7 S.W.3d 148, 151 (Tex. Crim. App. 1999) (emphasis added).  The community-caretaking function, however, is "totally divorced

from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973); *Corbin*, 85 S.W.3d at 276-77. As a result, a police officer may not properly invoke his community-caretaking function if he is primarily motivated by a noncommunity-caretaking purpose. *Corbin*, 85 S.W.3d at 277 (citing *Wright*, 7 S.W.3d at 151 ("[W]e must determine if [the officer] acted reasonably when he stopped the vehicle *out of concern for the welfare of the appellant…*".) (emphasis added)). Professor LaFave explains, "[I]t apparently remains open to defendants, whenever the challenged seizure or search is permitted without probable cause because of the special purpose being served, to establish a Fourth Amendment violation by showing the action was in fact undertaken for some other purpose …". *Id.* (citing WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 1.4 (3d ed. 1996)). Here, although the record reflects that Officer Knight had several motivations for stopping Christensen, the trial court, as the exclusive judge of credibility and finder of fact, could have concluded that Officer Knight was primarily motivated by community-caretaking concerns. *See id.*; *Hernandez v. State*, 376 S.W.3d 863, 874 (Tex. App.—Fort Worth 2012, no pet.).

Once it is determined that an officer is primarily motivated by his community-caretaking function, it must then be determined whether the officer's belief that the defendant needs help is reasonable. *Corbin*, 85 S.W.3d at 277. In evaluating whether an officer reasonably believes that a person needs help, courts may look to a list of four non-exclusive factors: (1) the nature and level of the distress exhibited by the

individual; (2) the location of the individual; (3) whether or not the individual was alone and/or had access to assistance other than that offered by the officer; and (4) to what extent the individual, if not assisted, presented a danger to himself or others. *Id.; Wright*, 7 S.W.3d at 151-52.

Because the purpose of the community-caretaking exception is to allow an officer to "seize" and assist an individual whom he reasonably believes is in need of help, the first factor is entitled to the greatest weight. *Corbin*, 85 S.W.3d at 277. The greater the nature and level of distress that is exhibited, the more likely that the police involvement will be a reasonable exercise of the community-caretaking function. *Id.* This is not to say that the weight of the first factor alone will always be dispositive. *Id.* In fact, the remaining three factors help to give more definition to the first factor. *Id.* A particular level of distress that is exhibited may be seen as more or less serious depending on the presence or absence of the remaining three factors. *Id.*

Here, the first factor, the nature and level of the distress exhibited, is somewhat high. Officer Knight testified that he first observed Christensen speeding down a closed road at about 2:30 a.m. on a Sunday morning and that Christensen had to brake very hard to stop from hitting a barricade and going into a ditch. Christensen then made a U-turn and backtracked down the closed street only to turn the wrong way down a one-way street, Ireland Street, despite three signs designating the street as one-way. This factor weighs in favor of the stop.

Concerning the second factor, the location was near an intersection as Officer Knight stated, "If he had gotten to University Drive, there would not have been a red

light or any kind of warning for him to stop." Officer Knight also testified about the location, saying that Northgate, a bar district, is at the very end of Ireland Street and that closing hour is two o'clock in the morning. Because of the nearby businesses and the fact that they would have just recently closed at that time of morning, this factor weighs in favor of the stop.

The third factor weighs in favor of the stop. Christensen was alone in his vehicle, and there is no indication that he had access to assistance independent of Officer Knight.

The fourth factor, the extent to which the individual presented a danger to himself or others if not assisted, weighs in favor of the stop. By driving the wrong way down a one-way street, Christensen presented a danger not only to himself but also to any other driver or pedestrian on the road. Officer Knight explained that it is not safe for someone to be driving the wrong way down a one-way street because there are no traffic control devices designed for people traveling the wrong way on that street.

Applying the factors listed above, we thus conclude that Officer Knight's exercise of his community-caretaking function was reasonable.

Christensen argues that his detention was not reasonable because "[t]he State did not articulate one fact during the testimony of Officer Knight showing a danger posed by the driver of the vehicle by entering a one-way street the wrong direction." Christensen analogizes this case to "weaving" cases and notes that he only traveled a short distance down the one-way street. But the "weaving" cases Christensen cites are distinguishable because they concern whether a stop was supported by reasonable

suspicion, while this case turns on the community-caretaking exception to the Fourth Amendment requirement that the stop be supported by reasonable suspicion.

Based on the foregoing, we thus conclude that Officer Knight reasonably seized Christensen through the exercise of his community-caretaking function; therefore, the trial court did not err in overruling Christensen's motion to suppress. *See Corbin*, 85 S.W.3d at 276 ("But, even without reasonable suspicion or probable cause that an offense has been committed, a police officer may reasonably seize an individual through the exercise of his community caretaking function."). Christensen's sole issue is overruled, and we affirm the trial court's judgment.

REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
     (Chief Justice Gray concurs with a note)*
Affirmed
Opinion delivered and filed March 27, 2014
Do not publish
[CR25]

*(Chief Justice Gray concurs in the Court's judgment affirming the trial court's judgment of conviction. A separate opinion will not issue.)